BERTHA H. COWMAN, and BERTHA H. COWMAN, Administratrix of WALTER E. HOOPES *vs.* G. LLOYD ROGERS, Administrator of ERNEST B. HOOPES and ALLEN C. HOOPES. G. LLOYD ROGERS, Administrator of MARIA R. HOOPES *vs.* G. LLOYD ROGERS, Administrator of ERNEST B. HOOPES and ALLEN C. HOOPES.

*Death in the Same disaster—Survivorship—Presumption.*

The regulations of a beneficial association provided that, if the beneficiary named in the certificate should die in the life-time of the member, and if the latter should make no other disposition of the benefit, it should be paid to the member's widow; if no widow, then to his children; if no widow or children survive him, then to his mother, and, if she be dead, then to his father; and, failing all these, then to the brothers and sisters of the insured. The benefit certificate of a member of this association was made payable, upon his death, to his wife. The member perished in a flood with his wife and children. HELD:

That there was no presumption of survivorship, and in the absence of competent and sufficient evidence to show that the wife, the nominated beneficiary, died before her husband, her legal representative was entitled to the fund.

APPEALS from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., IRVING, BRYAN, FOWLER, MCSHERRY, and BRISCOE, J.

*Richard Laws Lee*, for Bertha H. Cowman, &c.

*G. Lloyd Rogers*, and *Robert Gilmor*, for G. Lloyd Rogers, &c.

McSHERRY, J., delivered the opinion of the Court.

In the appalling and disastrous flood which made desolate the Conemaugh valley in the State of Pennsylvania, on May thirty-first, eighteen hundred and eighty-nine, Walter E. Hoopes, his wife Maria R. Hoopes, and their two children were swept away and perished. Mr. Hoopes' life was insured at the time in the Order of the Golden Chain, a beneficial association, and the certificate was payable upon his death, to his wife. The regulations of the association provide that if the beneficiary named in the certificate should die in the life-time of the member, and if the latter should make no other disposition of the benefit, it shall be paid to the member's widow; if no 'widow, then to his children; if no widow or children survive him, then to his mother, and if she be dead then to his father, and failing all these then to the brothers and sisters of the insured. The Order of the Golden Chain filed a bill of interpleader against the several claimants of the fund and brought the amount payable under the certificate into the Circuit Court of Baltimore City. The claimants of the fund are Mrs. Cowman, a sister of Walter E. Hoopes, and G. Lloyd Rogers, administrator of Maria R. Hoopes, and also administrator of the two children of Mr. and Mrs. Hoopes. The Court decreed that the fund belonged to the administrator of the children, and from that decree Mrs. Cowman and the administrator of Mrs. Hoopes have each appealed.

The only evidence in the record is the testimony of a single eye-witness, the sole survivor of the nine persons who were in the dwelling of Mr. Hoopes at the time the flood demolished it. From that testimony it appears that Mr. and Mrs. Hoopes, their two children, a sister

of Mrs. Hoopes, Mr. Smith, the witness, his wife and two children were occupants of a frame house in the village of Woodvale, near Johnstown: That Mr. and Mrs. Hoopes and Mr. Smith were in the parlor on the first floor on the day of the disaster, and that Smith seeing through the windows the waters rising rapidly on the outside rushed out of the room, leaving Mr. and Mrs. Hoopes there, and made his way to the second story where his wife and children and the children and sister of Mrs. Hoopes then were: That he hurried all of them up the stairway carrying his infant in his arms, and when they reached the attic steps the roof parted and fell, killing the child he was holding, breaking his own arm and precipitating all of them into the water. Every inmate of the house, except the witness, was lost.

By the Roman law, if a father and son perished together in the same shipwreck or battle, and the son was under the age of puberty, it was presumed that he died first, but if above that age, that he was the survivor; upon the principle, that in the former case the elder is generally the more robust, and in the latter, the younger. The Code Napoleon had regard to the ages of fifteen and sixty; presuming that of those under the former age the eldest survived; and that of those above the latter age, the youngest survived. If the parties were between those ages, but of different sexes, the male was presumed to have survived; if they were of the same sex the presumption was in favor of the survivorship of the younger. By the Mahometan law of India when relatives thus perish together, it is to be presumed that they all died at the same moment, and such also was the rule of the ancient Danish law. But the common law which governs us knew no such arbitrary presumptions. By that law where several lives are lost in the same disaster there is no presumption of survivorship by reason of age or sex; nor is it presumed

that all died at the same moment.   Survivorship in such a case must be proved by the party asserting it.   No presumption will be raised by balancing probabilities, that there was a survivor or who it was.   *Wing vs. Angrave*, 8 *H. L. C.*, 183; *Underwood vs. Wing*, 4 *De G., M. & G.*, 633; *Johnson vs. Merithew*, 80 *Maine*, 111; *Newell, et al. vs. Nichols, et al.*, 75 *N. Y.*, 78; 1 *Green. Ev.*, secs. 29, 30; *Best's Principles of Evidence*, 304; 2 *Wharton's Law of Ev.*, secs. 1280, 1281, 1282; 2 *Kent's Com.*, 572.

Whether Mr. and Mrs. Hoopes were drowned, or were killed by the falling of the house; and whether their children were also drowned, or were crushed by the shattered timbers of the building, no human being can tell. Whether the wife survived the husband or the husband the wife, or whether both expired simultaneously may be subjects for speculation and conjecture, but can never be proven or known.   Whether their children survived them or died before their parents is shrouded in equally impenetrable uncertainty.   As observed by the Lord Chancellor in *Underwood vs. Wing, supra,* "we may guess or imagine or fancy, but the law of England requires evidence."   If the parents were drowned and the children were killed by the falling roof, it is possible the former survived their offspring for a brief but scarcely appreciable space of time.   If on the other hand, parents and children lost their lives by the crushing of the building, it is more than probable that all of them perished at once.   If we were to draw inferences from the probable duration of life after a person has been submerged, those inferences would be at best only speculative and necessarily uncertain and unsatisfactory; and in regard to the husband and wife, who when last seen alive were both in the parlor of their home, there is not the faintest shadow of a fact upon which to base even a conjecture as to survivorship.   The only thing which is certain is that all perished in a common catastrophe.

Cowman *vs.* Rogers.

The funds now in the Circuit Court are not assets of Mr. Hoopes, (*Md. Mut. Benev't Society of Red Men vs. Clendinen, &c.*, 44 *Md.*, 434,) and the successful assertion of Mrs. Cowman's claim · to them depends, under the regulations of the Order of the Golden Chain, upon her being able to show satisfactorily, though not with absolute certainty, that the beneficiary named in the certificate died in the life-time of Mr. Hoopes. Not only so, but she must show further that Mr. Hoopes' two children also died before the death of their father. There is no evidence, as we have already stated, to establish these necessary conditions, and there are no presumptions which can be appealed to to supply the place of such evidence. Were it to be granted that the children expired first, there is absolutely nothing to indicate that Mrs. Hoopes predeceased her husband. Only in the event of her death in his life-time do the funds go over to some else. Her death in his life-time is, therefore, a condition which must exist, and must be shown to exist, before the contingent right of any subsequently entitled beneficiary can possibly ripen into a perfected claim. · In other words, her title under the certificate as the selected beneficiary can only be displaced by affirmative evidence that her husband survived her. Those who claim the funds as against her apparent title—who therefore seek to displace that title—must show by competent and sufficient evidence that she died before her husband did. If they fail to do this, they necessarily fail to establish their claim to the funds. Now, this is precisely the situation in which Mrs. Cowman stands, and which the administrator of the deceased children also occupies.

Mrs. Hoopes was the beneficiary named in the certificate. Her representative has a *prima facie* title to the fund. That title can only be divested by evidence showing that she died before her husband. They are both

dead, and both died in the same disaster.    There is no
proof and there is no legal presumption as to which one
died first, or as to their having died simultaneously.
Until it is shown that she died before her husband, the
fund is payable to no one else other than her represen-
tative, because it is only in the event of the death of the
nominated beneficiary in the life-time of the assured that
others can possibly take.    Until proof of her having so
died is first furnished, her *prima facie* title cannot be
displaced; and nothing to be found in the record is suffi-
cient to displace it.    It follows, then, that so much of
the decree as awarded the funds to the administrator of
the children must be reversed, and so much of the decree
as denied the relief sought by Mrs. Cowman must be
affirmed, and the cause will be remanded that another
decree may be signed awarding the fund to the adminis-
trator of Mrs. Hoopes.

> *Decree affirmed in part, and reversed in part,*
> *and cause remanded, the costs to be paid out*
> *of the fund.*