### E. E. HILDENBRANDT, ADMINISTRATOR, v. W. H. AMES, ADMINISTRATOR, ET AL.

#### Decided December 6, 1901.

**1.—Presumption of Survivorship—Common Law.**

Under the rules of the common law, which obtain in Texas, there is no presumption of survivorship or of simultaneous death in the case of persons who perish in a common disaster.

**2.—Same—Issue Not Raised by Evidence.**

Where a husband and wife perished in the great storm at Galveston, and the evidence showed merely that the husband, during the storm, started to his home to get his wife, and neither of them were ever seen aftrwards, the evidence was not sufficient to raise an issue of survivorship.

**3.—Life Insurance—Burden of Proof as to Survivorship.**

Where a life policy provided that it should be payable to the beneficiary named, "if living; if not living, to the insured's executors, administrators, or assigns," and the beneficiary and the insured perished in a common disaster, the burden of proof in an action for the proceeds of the policy was on the legal representatives of the beneficiary to show that the beneficiary survived the insured, and in the absence of such proof they were not entitled to recover as against the administrator of the insured's estate.

Appeal from Galveston. Tried below before Hon. Robt. M. Franklin.

*William F. Koch* and *Maco & Clegg Stewart,* for appellant.

*Harris & Harris,* for appellees.

PLEASANTS, ASSOCIATE JUSTICE.—This suit comes as aftermath of the ever memorable storm of September 8, 1900, which devastated a large portion of the city of Galveston and caused the untimely death of a great number of the residents of said city. The only issue involved in the suit is the proper disposition of the proceeds of a life insurance policy in the sum of $2500, taken out by Frank Doll in the Mutual Life Insurance Company of New York and payable to his wife, Minnie Doll, "if living; if not living, to the insured's executors, administrators, or assigns." Frank and Minnie Doll both resided in the city of Galveston on the 8th of September, 1900, and neither have been seen since said fateful day. The appellant, E. E. Hildenbrandt, is the administrator of the estate of Minnie Doll, and the appellee, W. H. Ames, of the estate of Frank Doll, both said administrators having duly qualified as such under legal appointment.

The suit was instituted by appellee, as administrator of the estate of Frank Doll, against the insurance company and appellant as administrator of the estate of Minnie Doll, to recover the amount due upon the policy. The insurance company answered acknowledging its liability upon the policy, and paid the money into the registry of the court to be disposed of as the court might adjudge as between the appellant and the appellee. The appellant answered and claimed the fund as an asset of the estate of Minnie Doll. The case was tried by the court below without the intervention of a jury, and judgment was rendered in favor of the plaintiff for the entire amount of the proceeds of said policy, and against the appellant for all costs of suit except a fee of $150 allowed the attorney for the insurance company, which fee was ordered paid out of the proceeds of said policy. It was further decreed that "this judgment, however, shall not prejudice the rights of the heirs of Minnie Doll, or the administrator of Minnie Doll's estate, to assert in the administration of the estate of Frank M. Doll, deceased, any interest in said fund as the community estate of Frank and Minnie Doll, deceased."

The facts in the case are few and undisputed. The material parts of the policy sued on are as follows:

"In consideration of the application for this policy, which is hereby made a part of this contract, the Mutual Life Insurance Company of New York promises to pay at its home office in the city of New York, unto Minnie Doll, wife of Frank M. Doll, of Flatonia, County of Fayette, State of Texas, if living, if not living to the insured's executors, administrators or assigns, twenty-five hundred dollars, upon acceptance of satisfactory proofs at its home office of the death of said Frank M. Doll, during the continuance of this policy, upon the following conditions, and subject to the provisions, requirements and benefits

stated on the back of this policy, which are hereby referred to and made part hereof. The annual premium fifty-two dollars and fifty cents shall be paid in advance on the delivery of this policy, and thereafter to the company at its home office in the city of New York on the fourteenth day of April in every year during the continuance of this contract."

Frank M. Doll and Minnie Doll, his wife, both perished in the storm on Galveston Island, September 8, 1900. They lived at Thirty-ninth and avenue T, in the western part of the city of Galveston. He left B. G. Tartt's grocery store in a wagon, on the cover of which was painted "B. G. Tartt, Grocer," it being the only wagon of Tartt's going to that part of the city on said date. Doll stated that he was going home to get his wife at his residence on Thirty-ninth and T. This was about one o'clock p. m. on September 8, 1900. The horse and wagon were never seen after the storm.

About 4 o'clock in the evening of September 8, 1900, Mr. Jennings was at Thirty-eighth and avenue S½, while the storm was raging, and he saw this wagon coming north, towards the city proper, on Thirty-ninth street between S and S½, about a block nearer the portion of the city than was Doll's residence. The horse drawing the wagon was belly deep in water, and moving as though he were being driven and guided; the reins and harness on the horse moved up and down as though they were being handled by some one in the wagon, but witness could not see and did not know whether there actually was any person in said wagon. He could not see because of the cover on the wagon. There was a heavy southwest current on avenue S at the time. The houses at Thirty-ninth and T were not blown down or washed away until about 7:30 p. m. Witness did not know Frank M. Doll or his wife.

This is all of the evidence in the case, and we think it is insufficient to raise the issue of the survivorship of either Frank or Minnie Doll, and until the sea gives up her dead, for aught that these facts disclose, we may not know whether one survived the other, or having in life together faced the overpowering fury of the mad waves which ingulfed and destroyed the homes and lives of a great number of the inhabitants of the fated city of Galveston, they were not divided in death by the space of even a moment's time. The common law, which is at once the product and conservator of that rugged independence and sturdy self-reliance which has ever characterized the English speaking people, disdaining to borrow from the more ancient code of Rome, which has formed the foundation of the system of jurisprudence of many of the most enlightened nations of the world, refuses to indulge in any presumption either of survivorship or of the simultaneous death of persons who perish in a common disaster, and applies to this class of cases the general rule that courts will not change the existing status in possession of property except upon adequate proof of facts authorizing such change. According to the Roman law the presumptions were never in favor of a simultaneous death. If a parent and son perished in the same battle or shipwreck, the son above the age of fifteen was presumed to

have survived his father; under that age to have predeceased him. If persons perishing in the same disaster were all under fifteen years of age, the presumption was that the elder survived; if over sixty the younger was presumed to have survived; and if husband and wife perished in a common disaster, the wife being the weaker was supposed to have died first. In this connection it is interesting to note the law on this subject which prevails in other nations of the world. In Holland, Prussia, and Austria the presumption is that those who perish in a common disaster die together, and no one receives or transmits succession. The law of India is the same effect. The Code Napoleon contains the following provisions:

"Article 720. If several individuals respectively entitled to inheritance from one another should die by the same event without anyone being able to ascertain which died first, the presumption of survivorship is determined by the circumstances of the fact; but, these being wanting, by the condition of age and of sex.

"Article 721. If those who thus died were under fifteen years of age, the eldest will be presumed to have survived; if all were above sixty the youngest will be so presumed; if some were under fifteen and some above sixty, the former will be so presumed.

"Article 722. If those who thus died were between fifteen and sixty years of age, the presumption of survivorship is with the male as against the female, if the difference of age between them does not exceed a year. If those who thus died were of the same sex, the presumption of survivorship follows the order of nature, and the younger must be presumed to have outlived the elder."

Italy and Spain have followed the French code with slight modification. In all of the States of the American Union, with the exception of Louisiana and California, the common law rule prevails, and no presumptions are indulged. The jurisprudence of the two States just named being largely derived from the French and Spanish, they have adopted the rule of the Roman law as modified by the French and Spanish codes. In this State it is well settled that the common law rule prevails, and no presumptions are indulged. Paden v. Briscoe, 81 Texas, 563; Cook v. Caswell, 81 Texas, 678.

There being no presumption either of survivorship or of simultaneous death, and no evidence in the case to sustain a finding of either of these facts, it is manifest that the party upon whom lay the burden to establish such survivorship or simultaneous death has failed to make out his case, and the only question for us to determine is upon which of the parties to this suit such burden was imposed. The determination of this question is not affected by the position of the parties as plaintiff or defendant in the court below. Of course the burden was on the plaintiff to make out a prima facie case, and the question is, did he do this by showing the issuance of the policy to his decedent, payable as before stated, and the death of both the insured and the beneficiary in a common disaster; or do such facts show a prima facie right to the

proceeds of the policy in the representative of the beneficiary and re-
quire plaintiff, to entitle him to a recovery, to further show that his
decedent survived his wife, or that both perished at the same time?
The question is one of much difficulty, and so far as we have been able
to ascertain has never been directly decided in this State. The case of
Paden v. Briscoe, supra, which is recited and relied on by both appel-
lant and appellee, was a suit upon a benefit certificate issued by the
Supreme Lodge Knights and Ladies of Honor to John F. Briscoe. The
suit was brought by Paden as administrator of the estate of Louella
Briscoe against the lodge and the administrator of John F. Briscoe.
Louella was the wife of John F Briscoe, and was the beneficiary named
in the certificate. The mother and sister of John F. Briscoe inter-
vened in the suit and claimed the proceeds of the certificate as heirs of
said Briscoe and dependent upon him for support. The by-laws of the
lodge provided that in event the named beneficiary should die before
the member to whom the certificate was issued, the proceeds of the cer-
tificate should be paid to the heirs of such deceased member who were
dependent upon him for support. John and Louella Briscoe perished
in a fire which consumed the hotel in which they were stopping. The
interveners obtained judgment in the court below, which was affirmed
on appeal. The trial court filed conclusions of fact and law, and one
of the conclusions of fact found was that John and Louella Briscoe died
at the same instant of time. The record before the Supreme Court
contained no statement of facts. The court in affirming the case held
that there was no presumption of survivorship nor of simultaneous
death of persons who perish in a common disaster, but that the trial
court having found as a fact that both husband and wife died at the
same instant of time, in the absence of a statement of facts it would be
presumed by the Supreme Court that there was evidence in the case
sufficient to sustain the findings of fact of the lower court, and there-
fore the judgment should be affirmed. In discussing the case Judge
Fisher, who, as a member of the Commission of Appeals, wrote the
opinion in the case which was adopted by the Supreme Court, says:

"In order to divert the fund from the direction named by the hus-
band it devolved upon the interveners to establish by evidence the exist-
ence of the contingency that would accomplish such purpose. The
court below finds that the wife, the beneficiary named by the husband,
did not die before her husband, but died at the same instant. The re-
sult of this finding is that the beneficiary named at the time the policy
was earned by the death of the husband did not survive him, and was
incapable of taking the proceeds of the policies. The purpose of this
contract of insurance entered into by the husband and the association
was to provide a fund for his wife payable at his death, and in the
event she was incapable of taking by reason of her death, then those
heirs of the husband dependent upon him should take. These are plain
provisions of the rules and by-laws of the association that enter into
and form a part of the contract of insurance. The use of the words

'die before' in the contract of insurance was evidently intended to mean that the beneficiary named must be dead and incapable of taking at the time the policy was earned by reason of the death of the husband. The instantaneous death of both the husband and wife successfully accomplished the inability of the wife to take as if she had died before. The court below finds that the interveners are the heirs of John F. Briscoe and were dependent upon him at his death. The contingency having occurred that would vest the property in his heirs dependent upon him, the court correctly rendered judgment in favor of appellees."

If it be conceded, as contended by appellant, that in the language above quoted the Supreme Court intended to announce the doctrine that the representative of the beneficiary named in an insurance policy who perished with the insured in a common disaster had a prima facie right to the proceeds of the policy, and that it devolved upon the heir or representative of the insured claiming such proceeds to show that the named beneficiary predeceased or died simultaneous with the insured, such holding was not necessary in the decision of the case before the court, and is therefore not authority binding upon this court. We are, however, not inclined to agree with appellant's interpretation of the decision. The interveners in that case were the heirs of John Briscoe, but they did not recover nor did they seek to recover simply as heirs at law, but as the second named beneficiaries in event the beneficiary first named should not be entitled to the proceeds of the policy, and suing in such capacity and asserting a right to the proceeds which was contingent upon the failure of the first beneficiary to take, the burden was clearly upon them to show that the facts existed which would entitle them to recover. We do not think the holding that, as between two beneficiaries named in an insurance policy in which the second is to take only in event the first shall die before the insured, it is necessary for the second beneficiary, in order to be entitled to the proceeds of the policy, to show that the first named beneficiary predeceased the insured, is equivalent to a holding that as between the representative of the insured and the representative of the sole beneficiary in an insurance policy, the insured and the beneficiary having perished in a common disaster, the prima facie right to the proceeds is in the representative of the wife, and the burden is upon the representative of the insured to show the prior death of the beneficiary or the simultaneous death of the insured and the beneficiary. But be this as it may, as before stated we do not regard the opinion in Paden v. Briscoe as controlling authority upon the question involved in this case. We think the question can be properly determined by a consideration of the nature of the contract of insurance, the character of the interest which the beneficiary has in such contract, and the intention of the parties as evidenced by the language of the contract and the object sought to be obtained by its creation. We think the contract in its nature is analogous to that of an express trust. The insured is the grantor or creator of the trust, the insurance company the trustee, and the bene-

ficiary the cestui que trust. While the trust fund out of which the beneficiary is to receive the amount named in the policy can not, strictly speaking, be said to have been created by the insured, by the terms of the contract he secures an interest in a fund provided by the insurance company equal to the amount named in the policy payable at his death, and under this contract which he obtains and keeps alive by the payment at stated times during his life of certain specified amounts to the insurance company, the amount named in the policy is held by the insurance company in trust for the beneficiary. If we consider the policy of insurance as partaking of the nature of a trust rather than a chose in action, it is at once seen that the interest of the beneficiary is not a "vested" interest in the broadest sense of that term, and the trustee can not be compelled to execute the trust until the contingency happens which entitles the cestui que trust to its execution. It follows that the burden is upon the beneficiary to show that such contingency has happened and all the conditions which are necessary to vest the title to the fund in him have been complied with, and unless the beneficiary's right to the fund is so proven, there is a failure of the trust, and the fund reverts to the insured or his representatives.

In the case of Ryan v. Rothweiler, 50 Ohio State, 595, the Supreme Court of Ohio in discussing this question say: "The theory of a failure of trust comes with more force and stronger reasons than the doctrine of choses in action. We regard the doctrine of choses in action as not fully applicable, because it conflicts in many cases with the controlling doctrine of insurable interest. The question is not as to change of beneficiary, but as to reverter of the policy to the assured by reason of the death of all the beneficiaries. On principle, and aside from any statute on the subject, we think that in this case the policy reverted to Mr. Helwig, and at his death became a part of his estate. It seems to us that this was the manifest intention and understanding of all parties interested, and that the result is just and equitable. While there may have been a vested interest, it was an interest not in possession, but in expectancy, liable to be devested by the death of the beneficiary before the death of the assured." The authorities are conflicting upon the question, but we think the better doctrine is as above stated. Johnson v. Van Epps, 110 Ill., 551; Fuller v. Linzee, 135 Mass., 468.

This view of the law, we think, harmonizes with the primary object and purpose of life insurance and with the manifest intention and understanding of the insured in entering into the contract  Life insurance has for its primary object the protection of those who would be pecuniarily damaged by the death of the insured, and to permit those who would not be so damaged to receive the benefit of the policy would be to defeat the purpose and intent of the contract; and especially is this true when the insured, as in this case before us, provides in the contract that the policy shall only be payable to the beneficiary in event she is living at the time of his death. Under the terms of the policy in question we are of opinion that Mrs. Doll's interest in the proceeds

was a contingent interest not transmissible to her heirs, and that it devolved upon her representative to show that the contingency had happened which would entitle her to receive the proceeds of the policy. The appellant having failed to make this proof, the policy reverted to the estate of Frank Doll, and the trial court properly rendered judgment in favor of the administrator of said estate. The case of Cowman v. Rogers, 73 Maryland, 406, is directly in point, and fully sustains the contention of appellant, but the opinion in that case is based upon the theory that the interest of the beneficiary in the insurance policy was a vested interest in the absolute sense of that term, and as before shown we do not consider this theory sound. In the case of Faul v. Hulick, the Court of Appeals of the District of Columbia in an able and learned opinion by Justice Shepard holds that the representative of the beneficiary named in a will who, under the terms of the will, would only take in event he survived the testator, and who perished with the testator in a common disaster, had a prima facie right to the property bequeathed by the will, and that in a suit by the heirs of the testator for said property it devolved upon them to show that the beneficiary did not survive. It is clear that this decision also rests upon the doctrine of vested interest, and under our conception of the nature of the contract of insurance and of the character of the interest of the beneficiary in said contract, is not applicable to the case we are considering. We refrain from a further discussion of the authorities bearing upon this very interesting question.

In our opinion the judgment of the court below should be affirmed, and it is so ordered.

*Affirmed.*

Writ of error refused.