Complainant issued to Philip George Hannum, during his lifetime, two instruments which it denominated as "Certificates of Indebtedness," each in the sum of $2,500, and each in the form following:
"No. 683 Amount $2500.00
 Registered Certificate of Indebtedness THE MASONIC TEMPLE ASSOCIATION OF ATLANTIC CITY, N.J. Incorporated under the laws of New Jersey, April 11, 1911.
This Certifies that The Masonic Temple Association of Atlantic City, N.J., is indebted to Philip George Hannum ____ and, for value received, promises to pay to Jennie H. Hannum, his wife, ____ if living, otherwise to the legal representatives of the said Philip George Hannum, ____ upon his death, the sum of Twenty-five Hundred 00/100 Dollars, ____ at the principal office of the said Association in the City of Atlantic City, in the State of New Jersey, without interest, upon the presentation of this Certificate and proofs of death and Certificate of Authority, subject to the following privileges, terms and conditions. * * *
(3) This Certificate is transferable only on the books of this Association and only to such members of the Masonic Fraternity as may be approved of by the Board of Trustees of this Association, and then only upon the request and with approval of said Philip George Hannum and Jennie H. Hannum. * * *"
There was a blank form of assignment printed on the back of each certificate under which the holders of certificates of indebtedness might, if they so chose, assign said certificates to the Masonic Temple Association. Mr. Hannum did not execute such an assignment on either certificate.
Philip G. Hannum and his wife, Jennie H. Hannum, died as a result of injuries sustained in a common disaster when an automobile in which they were both riding came into collision with a trolley car. Both of the Hannums were dead when the bodies were first seen after the disaster and there is no evidence from which it is possible to ascertain which of the two died first. Both bodies exhibited evidence of injuries from which all parties concede that death was instantaneous to both, no matter which one may have died first.
Philip G. Hannum died testate and his wife died intestate, and the legal representatives of both parties claim to be *Page 185 
entitled to the proceeds of the aforesaid certificates of indebtedness, with the result that complainant filed its bill of interpleader. Defendants consented to the right of complainant to relief and have filed their statements of claim to the fund, which has been deposited in this court.
The first point for decision is, there being no evidence as to the survivorship as between the two decedents, is there a presumption of survivorship in the one or the other?
Vice-Chancellor Berry, in Union Central Life Insurance Co. v.Elizabeth Trust Co., 119 N.J. Eq. 505, pointed out that there did not appear to be any New Jersey decision on this question and did not find it necessary to definitely pass thereon in that case. He did hold that "common law rules, in preference to those of the civil law, are uniformly followed in this state."
There seems to be no question but that, "at common law there is no presumption of survivorship arising from the age, sex, c., of persons who perish in a common disaster, so that any claimant upon whom the law places the burden of proving that one of the persons survived the other will fail in his claim unless he can prove survivorship by circumstances, witnesses, or otherwise." See annotation to McGowin v. Menken 177 App. Div. 841;164 N YS. 953; affirmed, 223 N.Y. 509; 5 A.L.R. at 797.
In 8 R.C.L. 716 § 12:
"In England and also in the United States, with the exception of those states which have codes embodying certain presumptions of survivorship, the common law doctrine applies, that where two or more perish in the same disaster, and there is no fact or circumstance to prove which survived, there is no presumption whatever on the subject."
The text is amply supported by citation of authority and is restated, with like citations, in the annotation to Carpenter
v. Severin, 43 A.L.R. 1340 (at p. 1344) and 17 C.J. 1179¶ 32.
It is also apparent by the overwhelming authority on well considered cases that not only is there no presumption of the relative order of dissolution but that "there is no presumption *Page 186 
as to simultaneous or co-instantaneous death." See annotation toCarpenter v. Severin, supra, citing all authorities up to 1925.
It is true, descent and distribution takes the same course as if the death had been simultaneous, but that rule does not assist in the determination of the question before me for decision, as next propounded. I am not now passing upon a distribution of the fund but simply upon the question as to the representatives of which estate may have the fund for distribution.
Inasmuch as the only states in the union which follow a rule differing from that at common law are the States of Louisiana (Napoleon code) and California (statute), this rule of the common law is the law of this state.
The next question for decision is, upon whom does the burden of proof in the instant case rest, i.e., on the representatives of Philip G. Hannum or those of Jennie H. Hannum?
Again, as pointed out by Vice-Chancellor Berry in the UnionCentral Life Insurance Case, supra, "there is a conflict of authority on this point." The learned vice-chancellor further calls attention to the fact that in some of the jurisdictions it is held, "that as between the representatives of the first beneficiary and those named as secondary or alternative beneficiaries, the burden of proof of survivorship of the first beneficiary rests upon his representatives."
He further points out that in those jurisdictions adopting such a rule, generally speaking, "the first beneficiary does not have a vested interest prior to the death of the insured."
It might also be added that in some jurisdictions the courts have determined the question as to whether the representatives of the first beneficiary should recover depended also on the court's construction of the contract, i.e., the question of the intent of the insured. Dunn v. New Amsterdam Casualty Co.,126 N.Y.S. 229; Hilderbrandt v. Ames, 27 Texas Civ. App. 377;66 S.W. Rep. 128, in which latter case the contract was construed from the standpoint of its creating a trust, with the insurer the donor, the insured the trustee and the beneficiary the cestui quetrust. *Page 187 
In the annotation to McGowin v. Menken, supra, the conflict of authority spoken of by Vice-Chancellor Berry is clearly outlined with a full citation of authorities and a discussion of the opinions in the cases which have been decided prior to 1918, and while the author of that note concluded that "the great weight of authority supports the view that if, in a life insurance policy or in the laws of a mutual benefit association, a second beneficiary is provided, to take on failure of the beneficiary named in the contract, who may be called the first beneficiary, the personal or legal representatives of the first beneficiary must, as against a second beneficiary or the representatives of the insured, assume the burden of proving that the first beneficiary survived the insured," he says that that general rule is true, "at least where, by the terms of thepolicy, the first beneficiary does not have a vested interestprior to the death of the insured." In that annotation the cases in support of the general rule are cited at length, as well as those cases which are contrary to the general rule, and it will serve no useful purpose to lengthen this opinion with a reiteration of those citations.
In the cases cited as being against the general rule, as above stated, are United States Casualty Co. v. Kacer, 169 Mo. 301;58 L.R.A. 436; 69 S.W. Rep. 370, and Cowman v. Rogers,73 Md. 403; 10 L.R.A. 550; 21 Atl. Rep. 64, both of which were decided on the theory of a vested interest in the first beneficiary.
In the Kacer Case, the language of the policy was, "payable to * * *, daughter, if surviving; if not, to the legal representatives of the insured," and the court determined that the beneficiary, the daughter, had a vested interest (in the absolute sense of that term) the minute the policy was issued, in the policy and the moneys to become due under it, and that thereafter the burden of proof rested on the second beneficiary to devest that vested interest.
In the Cowman v. Rogers Case, the benefit certificate was payable "upon his death, to his wife." The regulations of the beneficial association provided, "if the beneficiary named in the certificate should die in the lifetime of the member" *Page 188 
it should be paid to others than the first beneficiary. The court held that the burden of proof rested on the representatives of the insured and held that the representatives of the beneficiary named in the certificate "had a prima facie title to the fund. That title can only be diverted by evidence showing that she died before her husband. * * * Until proof of her having so died is first furnished, her prima facie title cannot be displaced." Commentators on this decision assumed from the language used by the court that the effect of the holding was that the beneficiary named in that certificate had a vested interest in the payment of the fund.
Both the Cowman and Kacer Cases have been criticised by other courts, the former in Hilderbrandt v. Ames, supra, wherein the court said:
"But the opinion in that case is based upon the theory that the interest of the beneficiary in the insurance policy was a vested interest in the absolute sense of that term, * * * we do not consider this theory sound."
The latter case was criticised in McGowin v. Menken, supra, wherein the court said: "I have been unable to adopt the reasoning which led the court to that conclusion."
It is quite apparent that the decision in the instant case may follow the theory of Dunn v. New Amsterdam Casualty Co.,supra, and ascertain the intent of Mr. Hannum, as gathered from a reading of the certificate of indebtedness and construing it in the same manner as if it were a testamentary disposition of the fund therein mentioned. If this theory was followed, there would seem to be no question but that the intent of Mr. Hannum was clearly that his wife, if living at his death, was to benefit by the fund, but that if she pre-deceased him it was to benefit Mr. Hannum's estate, and it would necessarily follow that the burden of proof would rest on the first named beneficiary.
If the court follows the reasoning in Hilderbrandt v. Ames,supra, and considers the nature of the contract from a trust viewpoint, with the insured as the donor of the trust, the insurance company as trustee and Mrs. Hannum as beneficiary, it would appear clear that the trustee could not execute *Page 189 
the trust until the contingency of Philip Hannum's death during the lifetime of his wife, and the burden of proof would be on the representatives of Mrs. Hannum.
Decision may also be rested on the theory of the Kacer andCowman Cases and in that event the court would be compelled to say that Mrs. Hannum had a vested interest in the policy and the proceeds thereof, in the absolute sense of that term, and the burden would be on the representatives of Philip Hannum.
It seems to me that under the decisions in this state the court is bound to conclude that Mrs. Hannum did have a vested interest as the named beneficiary in the certificates of indebtedness but the question is, was that interest vested in the absolute sense of that term, or was it merely an absolute interest, as limited or circumscribed by the terms of the certificate?
That the beneficiary named in the certificate of indebtedness in the instant case had a vested right prior to the death of Mr. Hannum is supported by Sullivan v. Maroney, 76 N.J. Eq. 104,
as well as Prudential Insurance Co. v. Swanson, 111 N.J. Eq. 477,
and the numerous cases cited in those opinions.
It will also be noted that the court, in Prudential InsuranceCo. v. Swanson, supra, in dealing with the question of the vested right of the beneficiary in a life insurance policy, said:
"The interest of an individual designated as beneficiary * * * is a vested property right, payable to him if he outlives theinsured, which right can only be divested by the insured making a change in beneficiary in the manner provided by the policy contract."
The certificate of indebtedness provided that the indebtedness should be paid to Mrs. Hannum "if living." She had a vested interest. What was the nature thereof? Merely that, without her consent, it was beyond the power of her husband or the Temple Association to deprive her of the benefits due her as beneficiary, but that right was only to collect the amount of the certificates, if living at the death of her husband. The vested right was to collect in accordance with the *Page 190 
terms of the certificate and not otherwise. The right so vested did not dispense with the necessity of proof on the part of her representatives of any condition which her husband stipulated should happen before the beneficiary became entitled to the proceeds. Her representatives are now asking, in effect, that complainant pay to them, by right of the beneficiary, and the association's question is, was she living, as provided by the certificate, at the time of her husband's death, and her representatives must prove the fact or the association would not be justified in paying, and if she fails to prove the fact, they are justified in paying the representatives of the husband.
The court, in Carpenter v. Severin, supra (at p. 1346), said:
"A vested right, however, means nothing more than it is beyond the power of the insured or insurer to deprive the beneficiary of it, but it does not mean that he can assert a claim otherwise than in accordance with the terms prescribed in the policy; nor does the vested character of the right dispense with the necessity of proof on the part of the beneficiary of any condition which the insured stipulated should happen before the beneficiary could obtain the proceeds."
It is argued that the certificate of indebtedness in the instant case is not in the same category as a policy in an ordinary life insurance company or in a beneficial or fraternal insurance company and that, therefore, the same rules would not govern in determining whether or not Mrs. Hannum had a vested interest as beneficiary prior to the death of the husband, but it seems to me that the point is without merit. The certificate of indebtedness is payable only after the death of Mr. Hannum. It is payable to a named beneficiary and there is no right reserved in Philip G. Hannum to change that beneficiary, excepting (a) with the consent of the beneficiary, (b) with the consent of the complainant and (c) by substituting a beneficiary who is also a member of the Masonic Lodge and, as pointed out by Vice-Chancellor Reed in Locomotive Engineers, c., InsuranceAssociation v. Winterstein, 58 N.J. Eq. 189 (at pp. 191,192): *Page 191 
"The presence or absence of the unlimited power of change of beneficiary depends, not upon the character of the association which insured, but upon the form of the contract entered into with the insured. The right to change a beneficiary may exist in a policy written by a regular company, if it is so stipulated; or it may be non-existent in a certificate written by a beneficial order, if the instrument is to be so construed."
So the form of the contract in the instant case is that which is the subject of consideration and construction and it is from its form that the rights of the present claimants must be determined and it matters not whether we call the contract a certificate of indebtedness, a benefit certificate or what not.
Supposing there was no other claimant to the fund represented by the certificates and the representatives of Mrs. Hannum went to the Temple Association demanding payment. The representatives of Mrs. Hannum would be required to furnish proof that she was living at the time of the death of her husband. They, the representatives, must receive payment in their own right, on their own proof, and not on the failure of the proof of the representatives of Mr. Hannum. The representatives of Mrs. Hannum would be proving affirmatively the conditions as required by the certificate of indebtedness issued to Mr. Hannum, i.e., they would be proving that Mrs. Hannum was alive at his death, and failing in that, they could not be paid, with safety. If, on the other hand, the representatives of Mr. Hannum were applying for the fund, they would prove a negative and not an affirmative,i.e., they would prove that Mrs. Hannum was not alive at the time of her husband's death.
My conclusion is that the burden of proof rests on the representatives of Mrs. Hannum to show that she was living at the time of the death of her husband and, having failed in this, the fund must be paid to the legal representatives of Philip G. Hannum. *Page 192