United States Casualty Co. v. Kacer.

UNITED STATES CASUALTY COMPANY v. KACER, Administrator of HARRY C. YOCUM, Interpleader, Appellant, and ZUMBALEN, Trustee of FLORENCE L. YOCUM, also Interpleader, Respondent.

Division One, June 18, 1902.

1. **Finding of Facts:** EQUITY: APPELLATE PRACTICE. A special finding of facts by the chancellor in an equity case, is not binding upon the appellate court, but may be adopted by it as a fair and substantial statement of the facts shown by the trial.

2. **Insurance:** INTEREST OF BENEFICIARY: ACCIDENT POLICY. There is no difference between an accident and ordinary life insurance policy as to the interest which the beneficiary takes therein.

3. ———: COMMON ACCIDENT: SURVIVORSHIP. There is no presumption of survivorship in case of death from a common accident. He who claims a right by virtue of survivorship must prove the fact of the survival of him through whom he claims, and failing in this, the property or fund remains vested as it was before the calamity.

4. ———: INTEREST OF BENEFICIARY: DISTRIBUTION: SURVIVORSHIP. The beneficiary in a policy of life insurance has, *ab initio*, an interest in the policy which neither the assured nor the company can impair or take away without his consent. In case it can not be shown whether the beneficiary or the assured was the survivor, the doctrine of distribution and transmission of estates, as set forth in the statute of descents, does not apply, and the fund does not go as it would have gone if there had been no appointed beneficiary. Under that statute the heir has only an expectancy in the intestate's ordinary property; but in insurance policies the beneficiary has an interest from its issuance.

5. ———: ———: POLICY AND MONEY. There is no difference between the beneficiary's interest in the policy and the fund. The one is not vested, and the other conditional. On the contrary, the beneficiary has a vested interest in the policy and the money that is to become due under it, the moment the policy is issued, and

United States Casualty Co. v. Kacer.

there is no power in the assured, by deed or will, to transfer to any other person the interest of the beneficiary. (Overruling Gambs v. Insurance Co., 50 Mo. 44.)

6. ——: ——: "IF BENEFICIARY SURVIVES:" BURDEN: SURVIVORSHIP: VESTED AND CONTINGENT INTEREST. If a policy provides that a named person is to be the beneficiary in case he survives the assured, otherwise the policy and money are to go to the assured's legal representatives, the appointed beneficiary takes a vested interest in the policy and fund, subject to be divested by his death prior to the assured's death, and the assured's representatives take only a contingent interest, to take effect only in case the primary beneficiary dies before the assured does. The primary beneficiary's interest being vested and the assured's legal representatives' interest contingent, the burden is on such representatives in case there is doubt as to whether the assured or the primary beneficiary died first, to show that the assured survived the beneficiary and if no such proof is made, the law is that the money is to be paid to the beneficiary's legal representatives.

7. ——: INTERPLEADER: POWER OF EQUITY COURT: ADMINISTRATOR AD LITEM: TRUSTEE. The court has the power, in a proceeding in equity, to appoint a trustee whenever it is necessary to protect, assert or defend a right to property that is in the custody of the court. And hence, where the question is whether the proceeds of life insurance policies belong to the estate of the assured or to that of the beneficiary, it is competent for the court, the regular administrator being unable to act, to appoint a trustee of the deceased beneficiary to interplead in his behalf, instead of an administrator ad litem.

8. Trustee: APPOINTMENT: EXCEPTIONS. Exceptions to the action of the court in appointing a trustee to represent the deceased beneficiary in an interpleader case, instead of an administrator ad litem, must be saved at the term at which such appointment is made.

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Ferris,* Judge.

AFFIRMED.

*William F. Woerner* for appellant.

(1) Where title to property depends upon the question of survivorship of persons shown to have perished in a com-

mon catastrophe, and further direct evidence is not obtainable, the law will raise no presumptions of survivorship based on age, sex or condition, and the person claiming through survivorship must fail. It may also be safely conceded here that there is no technical legal presumption that all died simultaneously; but neither is there any presumption to the contrary. And it follows from the necessity of the case, and is consistently so held by the courts that where the fact of survivorship is unascertainable, property rights dependent on such survivorship are disposed of as if all had perished at the same instant. Whether we choose theoretically to call this a "rule of distribution" or a presumption of law, the practical result is precisely the same for the purposes of this case. It unavoidably results that the burden of proof rests upon that party who would fail if all claimants died co-instantaneously. Florence could take (so the policy provides) only "if surviving;" and "if not" (i. e., in case of either prior or simultaneous death), then appellant takes. Appellant is therefore entitled to the fund under the above principles of law. Fuller v. Linzee, 135 Mass. 468; Newell v. Nichols, 75 N. Y. 89 (a leading case); Hildenbrandt v. Ames (Tex.), 66 S. W. 128; Johnson v. Merithew, 80 Maine 111; Balder v. Middeke, 92 Ill. App. 227; Russell v. Hallett, 23 Kans. 278; Wilbor v. Petitioner, 20 R. I. 126; Paden v. Briscoe, 81 Tex. 563; Railroad v. Miller, 2 Colo. 464 (statutory right to sue for death in accident caused by negligence); Ehle's Will, 73 Wis. 459; Wing v. Angrave, 8 H. L. 205; Woerner on Administration (2 Ed.), sec. 207, p. *446. (2) The rule of distribution above stated is in no way affected or influenced by the claim that Florence Yocum, as soon as the policy issued, had a present vested right to a future conditional enjoyment which could not be revoked so long as she lived. The question is not whether in her lifetime she had any vested rights, for, conceding she did, the point is, were they shown to have become consum-

mate? A conditional right under an unearned and unmatured policy depending on her survivorship is a very different thing from an unconditional right to the proceeds. The former could not, the latter would, descend to her representative. Unless she is shown to have survived in fact, or is presumed to have survived in law, she never had even a momentary right or cause of action to recover the proceeds and, therefore, had nothing to transmit to her representative. By the terms of the policy the insured's representative takes in case of simultaneous death. The policy, like a will or benefit certificate, calls for the beneficiary only at the moment of his death, and, unless she is then alive to answer, she can not take. The question, therefore, is, not what Florence's interests prior to her death were, but what they were when insured died. 53 Cent. Law Jour. (Sept., 1901), pp. 188-189; Fuller v. Linzee, supra; Hildenbrandt v. Ames, supra. (3) The provision in the policy is purely in the alternative; the proceeds are to go to Florence only, "if surviving," and "if not," to appellant. She is therefore no more a "primary beneficiary" for the purpose of survivorship than is appellant. Indeed, all such words as "if surviving," when occurring in dispositive instruments, clearly create a condition precedent, which must be shown to have existed before any right to the fund can pass thereunder. 53 Cent. Law Jour., 189, col. 1; Woerner on Administration (2 Ed.), sec. 436, pp. *941, *942; Owen v. Eaton, 56 Mo. App. 567; Hildenbrandt v. Ames, supra. Moreover, where the bounty or insurance intended for the individual benefit of the appointee first named, can not enure to her personally, because of the prior or practically simultaneous death of the object of his bounty, the just tendency of the courts in arriving at the intention of the insured is always to keep the fund within the insured's estate or line of heirs, rather than give it to those of the deceased beneficiary, who have no claim on his bounty; more especially where his designation is to the bene-

ficiary personally, designated by relationship, and is not expressed to be to her and her heirs or representatives. Hildenbrandt v. Ames, supra; Fuller v. Linzee, 135 Mass. 470; Lamberton v. Bogard, 46 Minn. 411; Bickerton v. Jaques, 28 Hun 120; Expressmen's Aid Soc. v. Lewis, 9 Mo. App. 415; Johnson v. Epps, 110 Ill. 560; 53 Cent. Law Jour., p. 189, col. 1; Ryan v. Rothweiler, 50 Ohio St. 595; Gambs v. Ins. Co., 50 Mo. 44. (4) Although it is not material in this case (because, as above shown, the question of vested interest or expectancy is irrelevant in determining the proper distribution of the fund), yet the proposition that Florence Yocum had a vested interest in the accident policy is one that is by no means a settled one, and if it were applicable in this case, could well be questioned. Such a policy does not look forward, like an ordinary life policy to an event certain in law—death of the insured—but is payable to her only in case insured is accidentally killed, in a certain manner, and within a certain time, and if she be then living; the main idea being the protection to the insured himself. Hoffman v. Indemnity Co., 56 Mo. App. 306; 53 Cent. Law Jour., p. 187; Tickton v. Fid. & Cas. Co., 87 Fed. 543; Ins. Co. v. Carroll, 86 Fed. (C. C. A.) 567; Lamberton v. Bogart, 46 Minn. 409; Tompkins v. Levy, 87 Ala. 269.

*W. S. Anthony, Wm. H. Clopton, Joseph H. Zumbalen* and *Joseph S. Lowrie* for respondent.

(1) Circumstantial evidence in the case establishes the fact that Mr. Yocum died before his daughter. Such evidence has controlled in similar cases. Pell v. Ball, Cheeve's Eq. (S. C.) 103; Smith v. Croom, 7 Fla. 147; Coye v. Leach, 8 Met. (Mass.) 373; Ehle's Estate, 73 Wis. 445; 24 Am. and Eng. Ency. of Law, p. 1027; 51 L. R. A. 863, note In re Wilbor. (2) The benefit certificate is payable to

Florence L. Yocum. Any one claiming adverse to her interest must prove that she died before her father. Cowan v. Rogers, 73 Md. 403; Underwood v. Wing, 19 Beav. 459; s. c., 8 H. L. C. 183; Taylor v. Diplock, 2 Phill. 251; Newell v. Nichols, 12 Hun 604; s. c., 76 N. Y. 78; Coye v. Leach, 8 Met. (Mass.) 371; Johnson v. Merithew, 80 Maine 111; Wharton on Ev., sec. 1282; Best on Ev. (2 Ed.), p. 478; Lawson on Presumptive Ev., pp. 298, 302. (3) The interest of Florence Yocum was a vested one. Pingree v. Ins. Co., 144 Mass. 374; Bank v. Hume, 128 U. S. 206; Packard v. Ins. Co., 9 Mo. App. 469; Glans v. Gloeckler, 104 Ill. 573; Splawn v. Chew, 60 Tex. 532. (4) Conceding, for the sake of the argument, that the contract between the parties is correctly stated in that clause of the policy itself, whereby the company agrees to pay the amount stated, upon the death of Mr. Yocum, to Florence if surviving, if not, to his personal representative, we contend that immediately upon the issuance of the policy the right thereto became vested in Florence, and that the burden of proof rests upon the personal representative of Mr. Yocum to show that the title thus vested was divested by the failure to survive her father. 3 Am. and Eng. Ency. of Law (2 Ed.), p. 980-5; 28 Cent. Dig., col. 2391, sec. 1470; Ins. Co. v. Buxer (62 Ohio St.), 49 L. R. A. 737; Millard v. Brayton (177 Mass.), 52 L. R. A. 117. A vested right is not necessarily indefeasible, but may be defeated by conditions appearing in the policy. Such conditions, however, are necessarily conditions subsequent. Ins. Co. v. Palmer, 42 Conn. 60; Voss v. Ins. Co., 119 Mich. 161; Glenn v. Burns, 100 Tenn. 295; Bank v. Flynn (Neb.), 78 N. W. 505; Smith v. Ins. Co., 44 Atl. (N. H.) 531; Walsh v. Ins. Co., 133 N. Y. 409.

MARSHALL, J.—This is a bill of interpleader, in equity, to determine the right to eight thousand dollars, proceeds of two policies of accident insurance, issued by the

plaintiff upon the life of Harry C. Yocum, and by the company paid into court. The interpleaders represent, respectively, the legal representatives of Harry C. Yocum, the assured, and his daughter Florence, the primary beneficiary under the policies.

At the request of the appellant, the circuit court made a special finding of fact under section 685, Revised Statutes 1899, which, although not binding upon this court in this equity case, fairly, and for all the purposes of this case substantially, states the facts shown upon the trial, and it is therefore adopted by this court. It is as follows:

"On June 16, 1897, Harry C. Yocum, of St. Louis, a widower, made two applications, on the printed blanks furnished by the company, to the United States Casualty Company of New York, for policies of accident insurance of five thousand dollars each. These applications were made to the agent of the company in St. Louis. These applications are in the usual form, containing information as the basis for the policy. They include a printed form as follows: '14. I desire the death benefit made payable'—then follows a blank for the name of the beneficiary, relationship and postoffice address. This blank was filled in with the written words, 'Miss Florence Yocum, daughter, Planter's House, St. Louis, Mo.' On these applications two several accident policies were issued on July 6, 1897, to Yocum, containing the usual provision for the payment of indemnity for loss of life occasioned by external, violent and accidental means. By the terms of each policy, the indemnity for loss of life was made payable to 'Miss Florence Yocum, daughter, if surviving, if not, to the legal representatives of the insured;' the words, 'Miss Florence Yocum, daughter,' being written, the remaining words of the clause being in print and part of the printed form of the policy. These policies were for one year, and, at the expiration of the year, were renewed without change of terms for another year. The first

clause in each policy begins as follows: 'In consideration of the agreements and warranties in the application for this policy, which application is made a part of this contract of insurance,' etc. Florence Yocum was the only child of Harry C. Yocum; was between eighteen and twenty years old; was living with and dependent upon him. Yocum was fifty-one years old.

"On December 30, 1898, Yocum with his said daughter and two young lady friends left New Orleans on the naptha yacht Paul Jones, to make a trip over the Gulf of Mexico to Belleaire, a point on the Florida coast. The yacht was about fifteen feet wide by fifty feet long. It was propelled by an explosive engine with naptha for fuel. The crew consisted of a pilot, an engineer and two hands. The yacht failed to arrive at its destination. Search was instituted by the father of one of the girls in the party, and, at length, on the shore of an island in the gulf fragments of the yacht were found, also a portion of the hull. The naptha tank was also found intact and containing naptha. The body of Miss Taggart, one of the party, was found in April, 1899, on a small island, dressed, with the exception of shoes. The body of the pilot was also found on another island about thirty miles distant about the same time. No other bodies were found.

"I find from the evidence that the yacht Paul Jones was wrecked, and that all on board, including both Harry C. Yocum and his daughter, perished. There is no testimony to show how the disaster occurred—whether by storm or collision. I can not find as a fact that Harry C. Yocum survived his daughter, or that she survived him; nor can I find that they both died at the same moment; or that they died from the same immediate cause. These facts of manner and time of death are not capable of being judicially ascertained.

"On the foregoing facts, I find, as a matter of law, that

the representatives of Florence Yocum are entitled to the proceeds of the policies."

In addition to such finding of facts and conclusion of law the learned trial judge rendered an able, clear, and comprehensive opinion, which counsel have reprinted in full in the briefs and which has been of much service to this court in the examination and adjudication of this case. The trial judge held, first, that the application and policy must be construed together and harmonized, if possible, and that there is no inconsistency between them in respect to who should be the beneficiary or beneficiaries thereof; that is, that the printed provision of the policy providing that if Florence did not survive her father, the policy should be payable to his legal representatives, was an additional and not inconsistent to the provision of the application that the loss should be payable to Florence; and, second, "that even in case where the contract of insurance is to pay the beneficiary named, 'if surviving,' such beneficiary takes a *vested interest,* subject to be divested if he fails to survive; and that until it is proved that he failed to survive, his legal representatives have a prima facie right to the proceeds of the policy."

From this decision the representatives of the assured appealed.

## I.

It is due to counsel for the respective parties hereto to say that their briefs are full, forceful, and exhaustive of the subject and leave no light unturned upon the controversy, and that with the opinion of the trial judge, they have materially lightened the labors of the court, in this rather unusual and very interesting case. The view herein taken renders it unnecessary to decide all the questions presented. The first inquiry in such a case as this necessarily is, what in-

terest does the beneficiary take in an ordinary life policy?
And there is no difference as to an accident policy. The ap-
pellant differentiates between the policy and the fund to
arise out of the policy, and says the beneficiary has a vested
interest in the policy, but not a consummated, complete right
to the fund. Or, otherwise stated, the beneficiary has a
vested interest in the policy but only a conditional interest
in the fund. On the other hand, the respondent contends
that a beneficiary has a vested interest in the policy and the
money to become due under it, which can not be divested by
the assured or the company or both, without the consent of
the beneficiary, and in case the beneficiary dies before the
assured, that vested interest passes to the legal representa-
tives of the beneficiary as a chose in action.

The subcontentions of the respective parties are, that
the appellant contends that if the policy is payable to a pri-
mary beneficiary "if surviving," and if not to an alternative
beneficiary, the term "if surviving" is a condition precedent
to the right of the primary beneficiary or his legal repre-
sentatives to recover, and, hence, the burden of proof is upon
him or them to prove that he survived the assured. On the
other hand, the respondent contends that the term "if surviv-
ing" is a condition subsequent and that the primary bene-
ficiary or his legal representatives must recover unless it be
proved that the primary beneficiary did not survive the as-
sured, and, hence, the burden of proof is upon the alternative
beneficiary to show that the primary beneficiary did not sur-
vive the assured. And incidentally the parties hereto have
considered the question of the rule in case of the death of
two persons in a common disaster. This proposition is best
disposed of before considering the other questions raised.

In all jurisdictions that proceed according to the policy
of the common law, there is no presumption as to survivor-
ship in case of a common calamity. The rule is that he
who claims a right by virtue of survivorship must prove the

fact of the survival of him through whom he claims and that failing in this, the property or fund remains vested as it was before the calamity. [Lawson's Law of Presumptive Evid., p. 298, rule 54.]

The rule is stated in 1 Taylor on Evidence (9 Ed.), p. 183, as follows: "A mass of ingenious reasoning clusters about the question, what presumption of survivorship exists when several persons perish in a common accident? The common sense of English law, after some slight attempts to adopt them, discards the intricate presumptions of the civil law, as based on age, health, sex, etc., and adopts the rule that there is no presumption on the subject whatever; that he who relies on the fact of survivorship must establish it as best he can."

Greenleaf on Evidence (16 Ed.), after speaking of the presumptions that obtain according to the Roman and civil laws, says, in note 5 to section 30, p. 126: "The rule as now established by the English and American cases is, that where it is proved that two or more persons perished in the same calamity, there is no presumption of law that one survives the others, or that all perished at the same time; the burden of proving that one survived the others, or that all perished simultaneously, is on the person who asserts such to be the fact."

The inquisitive legal mind will find the subject discussed and the principal decisions collated in a note to the case of In re Maria H. Wilbor, 51 L. R. A., p. 863, which is so exhaustive that a reference to it is all that is necessary to dispose of this incidental proposition in this case, and which leads to the abbreviated statement of the law that there is no presumption, but it depends upon the fact, and the fact must be proved by him whose recovery depends upon the establishment of the fact of survivorship.

But this does not settle the case, because the representatives of the father and daughter each claim that the rights

of the other depend upon their showing which of the two survived the other, and, hence, each claims the burden of proof is upon the other. The representatives of the father further claim that if neither can prove what the fact in this regard was, then the doctrine of *"distribution"* applies, and the fund must go where it would have gone if there had been no appointed beneficiary in the policy, to-wit, to the representatives of the assured. In support of this contention counsel cite many cases relating to the disposal of property, where two persons entitled thereto in the alternative, perish in a common disaster, and which hold that in such cases the property is distributed according to the statute of descents. Types of such cases are, Fuller v. Linzee, 135 Mass. 468 (seq. quaere. Is this case overruled by Millard v. Brayton, 177 Mass. 533 ?); Newell v. Nichols, 75 N. Y. 78; Hilderbrandt v. Ames, 66 S. W. 128, Tex Civ. App. 1st Dist. (sed contra, Irwin v. Ins. Co., 16 Tex. Civ. App. 683, 5th Dist. and decisions of Supreme Court of Texas in Ins. Co. v. Ireland, 17 S. W. 617; Splawn v. Chew, 60 Tex. 534; Byrne v. Casey, 70 Tex. 247).

Upon this contention the circuit court properly held that those cases had application only to the distribution and transmission of estates, and were totally inapplicable to policies of insurance. One essential difference is sufficient to point the rule. In cases of ordinary property no one has any vested interest during the life of the absolute owner thereof, under the maxim, *"Nemo est haeres viventis,"* but has only an expectancy, dependent upon the death of the owner during the lifetime of the expectant, and upon the further contingency that the owner did not dispose of the property by deed, gift or will, made before his death. Whereas, in case of a policy of insurance, the beneficiary has, *ab initio,* an interest in the policy which neither the assured nor the company can impair or take away by any act or deed

without his consent. [Masonic Ben. Assn. v. Bunch, 109 Mo. l. c. 580.]

This naturally leads to the question, what is the nature and character of the interest that the beneficiary in a life insurance policy has? In Bank v. Hume, 128 U. S. l. c. 206, Mr. Chief Justice FULLER, speaking for the Supreme Court of the United States said: "It is indeed the general rule that *a policy, and the money to become due under it* [the italics are superadded to point the applicability of the language used to the respective contentions of the parties hereto as to the interest of the beneficiary in the 'policy' and in the 'fund'] belong, the moment it is issued, to the person or persons named in it as the beneficiary or beneficiaries, and that there is no power in the person procuring the insurance by any act of his, by deed or by will, to transfer to any other person the interest of the person named."

The rule is thus stated in 3 Am. and Eng. Ency. Law (2 Ed.), p. 980: "In ordinary life insurance, where no power of divestiture is reserved, the general doctrine prevails that the issue of the policy confers immediately a *vested* right upon, and raises an irrevocable trust in favor of, the party named as beneficiary, a right which no act of the insured can impair without the beneficiary's consent." In support whereof cases are cited in note 10, which show this to be the rule in England, Canada, Supreme Court of the United States, Alabama, Arkansas, California, Connecticut, Florida, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Missouri, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas and Virginia. It is further noted (Ibid, 982) that a contrary doctrine prevails in Tennessee and Minnesota, where it is held that the beneficiary has no such interest as would prevent the insured from disposing of the policy by assignment, will, or change of beneficiary. And

(Ibid, p. 984), it is pointed out that in Gambs v. Ins. Co., 50 Mo. 44, it was held that in case the policy was made payable to the wife of the assured, and she died, and the assured married again, the assured had a right to charge the beneficiary named in the policy and make it payable to the second wife instead of to the first wife. The reasoning upon which this conclusion was based was that it must be supposed that the husband intended to make a provision for his wife in case he died before she did, and that he did not intend after she had died (he being alive) to spend his money keeping alive a policy for the benefit of his deceased wife's relatives who did not even have an insurable interest in his life, and as he had changed the beneficiary, and had died, and the company had paid the insurance to his second wife, it was held that the administrator of the first wife's estate could not recover from the insurance company again. This reasoning overlooks the fact that if the husband did not want the insurance to go to the representatives of the first wife and desired to provide for the second wife, the way was open to him to so arrange it, by simply letting the policy lapse for non-payment of premiums, so far as he was concerned (but the deceased wife's representatives could prevent a forfeiture of the policy by paying the premiums) and by taking out a new policy for the second wife. The decision is evidently influenced by the consideration that the deceased wife's representatives had no insurable interest in the life of the husband. But this overlooks the fact that they recover by reason of the policy being a chose in action of the wife, and not by reason of their having any insurable interest in the husband's life.

The Am. and Eng. Ency. of Law does not note that this case is practically overruled by the cases of Masonic Ben. Assn. v. Bunch, 109 Mo. 1. c. 580, which case is followed and expressly approved in Wells v. Mutual Ben. Assn., 126 Mo. 1. c. 638, and the right of substituting beneficiaries is

limited to benefit certificates in fraternal beneficial associations, because such right of substitution is reserved to the assured by statute or by the terms of the constitution and by-laws of such associations, but as to ordinary life insurance it is expressly said that the beneficiary has a *vested* interest in the policy. To avoid further misunderstanding the case of Gambs v. Ins. Co., 50 Mo. 44, is hereby expressly overruled.

It being thus ascertained that the beneficiary of an ordinary life policy has a vested interest in the policy and the money to come out of it, the next question in this case is, what is the true meaning of the terms "if surviving?" Does this destroy the vested interest that without such provision in the policy would pass to the beneficiary the moment the policy was issued, and make the interest of the beneficiary a contingent one dependent upon the beneficiary surviving the assured? In other words, do those words create a condition precedent, or do they leave the interest of the beneficiary a vested interest, but liable to be defeated by the death of the beneficiary before that of the assured—in other words, do these words create a condition subsequent?

Without such words the interest of the beneficiary is a vested interest. The addition of such words does not change the nature or character of the interest of the beneficiary as long as the beneficiary lives. It only affects the question of who is entitled to the money arising out of the policy in case the beneficiary dies before the assured. Where a particular person is named in a policy, without any such or similar words of qualification, the interest of the beneficiary is a vested interest, and this being so, if the beneficiary dies before the assured, that vested interest passes to the legal representatives of the owner of such vested interest, and the interest is not divested or impaired by reason of the death of the beneficiary. [3 Am. and Eng. Ency. Law, p. 987; Am. Dig. (Century Ed.), p. 2391, sec. 1470, et seq.]

For the express purpose of avoiding this result and of controlling the channel of succession in case the beneficiaries died before the assured, the practice grew up of reserving a "divestiture" in such cases, that is, of providing that if the primary beneficiary was not living when the assured died, the policy and the money arising out of it, should go to a named alternative beneficiary, thus preventing the same from passing to the legal representatives of the primary beneficiary, as it otherwise would do: This is called a reserved power of "divestiture." Which means, of course, a divestiture of a previously vested interest, and not merely a divestiture of an expectancy, for if the interest of the beneficiary be merely an expectancy, dependent upon the beneficiary outliving the assured, then, of course, if the beneficiary did not do so, the expectancy would fail, and there would be no necessity for reserving a power of divestiture. No interest could vest under a mere expectancy, prior to the happening of the condition upon which it depended, and none having vested there would be nothing to divest.

Such terms in a policy, therefore, provide for a "divestiture" of the vested interest of the primary beneficiary, and create a contingent interest in the alternative beneficiary, that is, the alternative beneficiary only becomes entitled to the fund upon the happening of the contingent event of the death of the primary beneficiary before that of the assured. In other words, such a provision in a policy does not make the interest of the primary beneficiary a contingent interest dependent upon and to attach only in case of the death of the assured before that of the primary beneficiary, but creates a vested interest in the primary beneficiary which may be divested by the death of the primary beneficiary before that of the assured, and creates also a contingent interest in the alternative beneficiary to take effect only in the event the primary beneficiary died before the assured.

Or, otherwise stated, a policy payable to a named bene-

ficiary, but with such words of divestiture, creates a vested interest in the policy, and the money to arise out of it, in the primary beneficiary, coupled with a condition subsequent, that the vested interest shall be divested out of the primary beneficiary and his representatives and vested in the alternative beneficiary upon the happening of the subsequent contingency, of the primary beneficiary dying before the assured.

It necessarily and logically follows that if the primary beneficiary has a vested interest which can only be divested upon the happening of a contingency, and the alternative beneficiary has only a contingent interest, dependent upon the "divestiture" of the vested interest of the primary beneficiary, the primary beneficiary or his legal representative is entitled to the policy and the money arising out of it, unless the alternative beneficiary shows by competent evidence, as a fact, that the vested interest has been divested and that the contingent interest of the alternative beneficiary has become a vested right by reason of the happening of the contingency provided therefor. [Paden v. Briscoe, 81 Tex. 563; Cowman v. Rogers, 73 Md. 404; Thomas v. Cochran, 46 L. R. A. 160; Hopkins v. Ins. Co., 40 C. C. A. 1, and note.]

In this case Florence was the primary beneficiary, and had a vested interest liable to be defeated by the happening of a condition subsequent. The legal representatives of the assured are the alternative beneficiaries, who have only a contingent interest, depending upon the happening of the condition subsequent, the divestiture of Florence's vested interest. Florence or her legal representatives are therefore entitled to the money, unless it is shown that her vested interest was divested. The alternative beneficiary is not entitled to the fund until the vested right of the primary beneficiary has been divested. If the vested interest is not shown to have become divested, Florence or her legal repre-

sentative is entitled to the money. Neither she nor they, therefore, are called upon, in the first place, to prove a negative, that is, that she is not entitled to the money because her vested interest has become divested. But the alternative beneficiary is not entitled to recover unless the vested interest has become divested. The burden of proof is therefore clearly and logically upon the alternative beneficiary to show a divestiture. Inasmuch as no such proof is offered, or in the circumstances of this case could be offered, it follows that the money must go just as the policy provided, to-wit, to Florence. The assured so arranged it. The company so agreed that it should go. The law leaves it where it is, because it can not be divested or disturbed for want of proof that the vested rights of the primary beneficiary had become divested and the contingent rights of the alternative beneficiary had become vested.

There is no merit in the objection that the circuit court appointed a trustee for the legal representatives of Florence, instead of an administrator *ad litem* of her estate to act while the regular administrator was unable to act. This is a proceeding in equity, and such a court has a right to appoint a trustee wherever it is necessary to protect, assert or defend a right to property that is properly in the custody of the court. Moreover, the record does not disclose that the appellant objected to such action of the court when it was taken, or saved exception thereto by a term bill of exceptions. If this was not done it could not be saved in the final bill of exceptions, which was signed at a term subsequent to that at which the ruling complained of occurred. [Richardson v. Assn., 156 Mo. 407; Smith v. Baer, 166 Mo. l. c. 401.]

The judgment of the circuit court is right and is affirmed. All concur.