# SUPREME COUNCIL OF ROYAL ARCANUM, Plaintiff, v. MARTIN KACER, Administrator, Respondent; GERTRUDE M. HARRIS et al., Appellants.

### St. Louis Court of Appeals, August 4, 1902.

1. **Survivorship:** OWNERSHIP OF PROPERTY OF PERSONS LOST IN A COMMON CATASTROPHE: INSTANTANEOUS DEATH: DISTRIBUTION OF FUNDS. If two or more persons are lost in the same catastrophe, and the ownership of property is afterwards drawn into litigation by contesting parties, each claiming to derive his right from one of the deceased persons as being the actual owner of the property when he died, and the question of which of those deceased persons owned it at his death turns on which survived longest, and there is no proof on this subject, the right to the property will be adjudged as it would be if it were known that both died at the same instant.

2. **Administrator:** TITLE TO PERSONAL PROPERTY IN ADMINISTRATOR: ASSETS: EQUITABLE CLAIM. An administrator takes title only to the personal assets of a decedent and those assets consist of property owned by, or to which the decedent had a legal or an equitable claim when he died.

3. **Benefit Certificate:** FRATERNAL INSURANCE ORDER: BENEFICIARY HAS NO VESTED INTEREST, WHEN: PROCEEDS OF CERTIFICATE IN BENEFICIARY SOCIETY. A benefit certificate in a fraternal insurance order confers no vested interest in the beneficiary named, nor has he any property in the certificate, since he is subject to displacement by the insuring member naming another beneficiary at any time during the life of the member; the proceeds of such certificate will go to the administrator of the beneficiary as assets only on proof that the beneficiary survived the member on whose life it was issued.

4. **Fraternal Beneficiary Society:** BY-LAWS: CONSTRUCTION OF BY-LAWS OF FRATERNAL BENEFICIARY SOCIETY. The fair construction of a by-law of a fraternal order providing that in the event of the death of all the beneficiaries designated by an insuring member before the latter's death, the benefit shall be paid to the member's relatives according to certain enumerated degrees of relationship, is that the by-law provides for a disposition of the benefit in case of the inability to take of the designated beneficiaries by reason of either prior or simultaneous death.

5. ———: ———. Where another by-law says: "If any designation shall fail *for illegality or otherwise*, the benefit shall be paid to the member's relatives according to their respective degrees of relationship," the relatives will take the benefit if the designated beneficiary is unable to take for any reason.

6. ———: ———: BENEFITS PAYABLE ONLY TO RESIDENTS OF UNITED STATES OR CANADA: BY-LAWS OF FRATERNAL BENEFICIARY SOCIETY: CONSTRUCTION OF. A by-law that no benefit shall be payable to any person or persons permanently residing outside the limits of the United States or Canada, limits the beneficiary who may be first designated to persons residing inside those countries; but it does not prevent relatives of the member who reside outside from taking, if the designated beneficiary can not. A person who could in no event take the benefit can not raise an objection to a non-resident's right which is uncontested by the society itself.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer,* Judge.

REVERSED AND REMANDED.

### STATEMENT OF THE CASE.

The Royal Arcanum is a fraternal-beneficial association incorporated under the laws of Massachusetts and doing business in this State. On the twelfth day of March, 1886, it issued a benefit certificate on the life of Harry C. Yocum by which it promised to pay to his daughter and only child, Florence, three thousand dollars upon satisfactory evidence of the death of said Harry C. Yocum and the surrender of the certificate, provided said certificate had not previously been surrendered by him and another issued at his request.

Among the objects of the association declared in its constitution and by-laws is the following:

"To establish a widow's and orphan's benefit fund, from which, on satisfactory evidence of the death of a member of the order who has complied with all its lawful requirements, a sum not exceeding three thousand dollars shall be paid to the wife, children, relatives of

or persons dependent upon such member, as limited and described in the laws of said order relating to benefit certificates, as he may direct in accordance with said laws."

One section of the by-laws (323) requires each applicant for insurance to enter on his application the name, residence and relationship or dependence of the person to whom he desires the benefit paid, who must be either a person dependent on the insuring member for support or a relative within one of the twelve gradations enumerated in the next section, which specifies two classes of persons who may be made beneficiaries, the first class consisting of the member's kindred in different degrees and the second class of persons dependent on him for support. Said section, in so far as it need be quoted, is as follows:

"Sec. 324. A benefit may be made payable to any one or more persons of any of the following classes only:

"CLASS FIRST.

"Grade 1. Member's wife.

"Grade 2. Member's children and children of the deceased children and member's children by legal adoption.

"Grade 3. Member's grandchildren.

"Grade 4. Member's parents and member's parents by legal adoption.

"Grade 5. Member's brothers and sisters of the whole blood.

"Grade 6. Member's brothers and sisters of the half blood.

"Grade 7. Member's grandparents.

"Grade 8. Member's nieces and nephews.

"Grade 9. Member's cousins in the first degree.

"Grade 10. Member's aunts.

"Grade 11. Member's uncles.

"Grade 12. Member's next of kin who would be distributees of the personal estate of such member upon his death intestate.

## "CLASS SECOND.

"To an affianced wife or to any person who is dependent upon the member for maintenance (food, clothing, lodging or education)."

Satisfactory proof of the dependence of the beneficiary on the member is required before a certificate will be issued in favor of a person not related to the insured, and further proof of dependency at the time of the member's death before payment will be made, and the issuance or assignment of certificates to secure the creditors of members is forbidden.

Other regulations pertinent to the questions arising in this cause are the following:

"*If designation fails.*

"Sec. 330. If at the time of the death of a member, who has designated as beneficiary a person of class second, the dependency required by the laws of the order shall have ceased, or shall be found not to have existed, or if the designated beneficiary is his wife, and they shall be divorced upon the application of either party, or if any designation shall fail for illegality or otherwise, then the benefit shall be payable to the person or persons mentioned in class first, section 324, if living, in the shares and order of precedence by grades as therein enumerated, the persons living of each precedent grade taking, in equal shares per capita, to the exclusion of all persons living of subsequent enumerated grades; except that in the distribution among persons of grade second, the children of deceased children shall take by representation the share the parent would have received if living. If no one of said class first shall be living at

the death of the member, the benefit shall revert to the widows' and orphans' benefit fund.

"*Death of one or more beneficiaries.*

"Sec. 331. In the event of the death, before the decease of a member, of one or more of the beneficiaries, designated by him in accordance with the laws of the order, if he shall have made no other or further disposition thereof, as provided in the laws of the order, upon his death that part of the benefit made payable to the deceased beneficiary or beneficiaries shall be paid to the surviving beneficiary or the surviving beneficiaries equally.

"*Death of all beneficiaries.*

"Sec. 332. In the event of the death of all the beneficiaries designated by the member in accordance with the laws of the order, before the decease of such member, if he shall have made no other or further disposition thereof, as provided in the laws of the order, the benefit shall be disposed of as provided in section 330; excepting that if in such event the member shall leave surviving him his wife and a minor child or children of a marriage prior to that with such wife, the benefit shall be payable as follows: one-third thereof to such wife, and two-thirds thereof to all the minor children of said member equally."

Mr. Yocum and his daughter were aboard a naptha launch, the "Paul Jones," which left New Orleans on the twenty-eighth day of December, 1898, for a cruise in search of health and pleasure around the coast of the Gulf of Mexico to Belleair, Florida. Eight persons were on the launch, none of whom was seen alive after it reached the waters of the gulf. The boat was destroyed by some unknown cause and all on board must have perished. Portions of the boat itself and of the garments of its passengers and crew were afterwards

found on the beaches of small islands near the coast and not far east of the mouth of the Mississippi river, as were the bodies of the pilot and one young lady; but the remains of Mr. Yocum and his daughter were never found.

The administrator of the daughter claimed the money due on the benefit certificate issued on her father's life and so did Gertrude M. Harris and Nettie Scanavi, who are his nieces and next of kin, the former of them residing in St. Louis and the latter in Vienna, Austria.

On account of these conflicting claims, the supreme council of the Royal Arcanum filed a petition against the claimants, paid the money into court and asked that they be compelled to interplead for it, which was ordered.

Much evidence was introduced about the comparative health and strength of Mr. Yocum and his daughter when they started on their cruise, for the purpose of showing who was likely to survive longest in a disaster to the boat; but a rehearsal of it would be useless, for it made no impression on us as tending to prove which survived. Nothing in the record throws the faintest light on the causes or incidents of the catastrophe and it will probably remain forever one of many mysterious tragedies of the sea.

Judgment was given below for the administrator of Florence Yocum's estate and the nieces appealed.

*Wm. H. Clopton* and *Wm. S. Anthony* for respondent.

(1) The circumstantial evidence in the case establishes the fact that Mr. Yocum died before his daughter. Such evidence has controlled in similar cases. Pell v. Ball, Cheeves Equity (S. C.) 99-103; Smith v. Croom, 7 Fla. 147; Coye v. Leich, 8 Met. (Mass.) 371-373; Ehle's Estate, 73 Wis. 445; 24 Am. and Eng. Enc. of Law, p. 1027; 51 L. R. A. 863, note to In re Wilbor.

(2) The benefit certificate is payable to Florence L. Yocum. Any one claiming adverse to her interest must prove that she died before her father. Cowan v. Rogers, 73 Maryland 403; Underwood v. Wing, 19 Beav. 459; s. c., 8 H. L. C. 183; Satlerthawaite v. Powell, 1 Curt. 705; Taylor v. Diplock, 2 Phill. 251; Newell v. Nichols, 12 Hun 604, affirmed in Court of Appeals, 76 N. Y. 78; Coye v. Leach, 8 Met. (Mass.) 371; Johnson v. Merithew, 80 Maine 111; Wharton on Ev., sec. 1282; Best on Ev. (2 Ed.), p. 478; Lawson on Presumptive Ev., pp. 298, 302.

*Wm. F. Woerner* for appellants.

(1) Unless Florence Yocum survived her father she never had any such interest in the fund as could have been transmitted to her representative. The mere naming of a beneficiary in the benefit certificate of a member of a fraternal order confers no rights whatever until the death of the member. The person named has a mere expectancy, which can not ripen into an interest so as to be transmissible to his administrator unless he does survive the member. Hence, he necessarily claims only by reason of a survivorship. Masonic Benefit Ass'n v. Bunch, 109 Mo. 560; Hofman v. Grand Lodge, 73 Mo. App. 47; Expressmen's Aid Soc. v. Lewis, 9 Mo. App. 412. (2) Where several persons perish in a common calamity, and no further evidence is obtainable, the law raises no presumptions of survivorship based on age or sex, and the party upon whom rests the burden to prove survivorship must fail. It may also be conceded that there is no technical legal presumption that all died simultaneously. But neither is there any presumption to the contrary; and it follows from the necessity of the case, and is consistently so held by the courts, that all property rights dependent on such survivorship are disposed of as if all had perished at the same instant. Whether theoretically we call this a

"rule of distribution" or a presumption of law, the practical result is precisely the same for the purposes of this case. It unavoidably results that in every case of deaths in common disaster the burden of proof rests upon that party who would fail if all claimants died co-instantaneously. That party being Florence Yocum, her representative has the burden of proof, and must therefore fail, because, if she died simultaneously with Mr. Yocum, her expectancy never ripened into a transmissible interest. Balder v. Middeke, 92 Ill. App. 227; Willbor, Petitioner, 20 R. I. 126; Fuller v. Linzee, 135 Mass. 468; Paden v. Briscoe, 81 Tex. 563; Newell v. Nichols, 75 N. Y. 78. (3) In case of a failure of the selected beneficiary, and the circumstances are such that the by-laws do not cover the particular case so as to point out the new beneficiary (not providing, for instance, for a simultaneous death) the fund will not be forfeited or revert to the order, but will be decreed to go to the heirs of the member. Keener v. Grand Lodge, 38 Mo. App. 543.

GOODE, J.—One feels the need of the repudiated presumptions of the civilians in dealing with this case, in which there is an utter lack of either positive or circumstantial evidence concerning the occurrences necessary to be known in order to render an indubitably correct judgment. The wisdom of the common law in never indulging a presumption as to which of several persons who perished in the same disaster survived longest, has been unduly vaunted; for the civil law has recourse to that means of settling disputes concerning the ownership of property only in instances where there is no proof; and then it becomes absolutely necessary to determine the ownership by some rule more or less arbitrary. The presumptions of those Continental Codes which follow the Roman law are more apt to hit the truth than others, because they are based on attributes of age and sex which fix the average strength of

individuals and their ability to prolong their lives in shipwrecks or other disasters, in which strength may be useful in the struggle to live. While the common law explicitly rejects all presumptions and insists on proof in every case, it implicitly accepts one; for the rule by which the right to property is ascertained in controversies growing out of such casualties, namely, that the property shall be disposed of as though all the deceased persons through whom the litigants claim, died at the same instant, unless there is proof to show otherwise, has all the consequences of a presumption of simultaneous death.

The logical result of discarding presumptions and exacting evidence is to put the burden of proving survivorship on any party claiming to derive title to property from a deceased person whose ownership during life depended on his outliving some other person also deceased, and the practical result is that if the party on whom the burden of proof rests, can not make proof, his case fails. 24 Am. and Eng. Ency. Law, 1027; 1 Greenleaf on Evidence (16 Ed.), note, p. 126: United States Casualty Co. v. Kacer, Admr., et al., 169 Mo. 301 (69 S. W. 370); Underwood v. Wing, 19 Beav. 459; Wing v. Angrave, 8 H. & L. Cas. 183; Newell v. Nichols, 12 Hun 604, 17 N. Y. 78; Balder v. Middeke, 92 Ill. App. 227; Fuller v. Linzee, 135 Mass. 468; Paden v. Briscol, 81 Tex. 563; Taylor v. Diplock, 2 Phillim. Eccl. Rep. 261; Mason v. Mason, 1 Meriv. 308; Satterwaite v. Powell, 1 Curt. Eccl. Rep. 705; Newell v. Nichols, 75 N. Y. 78.

Whether based on a presumption of synchronous death or not, the law is settled that if two or more persons are lost in the same catastrophe and the ownership of property is afterwards drawn into litigation by contesting parties, each claiming to derive his right from one of the deceased persons as being the actual owner of the property when he died, and the question of which of those deceased owned it at his death turns

on which survived longest, and there is no proof on that subject, the right to the property will be adjudged as it would be if it were known that both died at the same instant.    In re Wilbor, 20 R. I. 126, 51 L. R. A. 863; Newell v. Nichols, supra; Russell v. Hallett, 23 Kas. 276; Johnson v. Merithew, 80 Maine 111; Kas. Pac. R'y Co. v. Miller, 2 Colo. 445; Balder v. Middeke; Fuller v. Linzee, supra; In re Goods of Selwyn, 3 Hogg. Eccl. Rep. 748.

No good reason can be given for restricting the operation of the rule to testamentary dispositions of property and it has been consistently extended to the settlement of claims arising otherwise, as by the laws of inheritance, insurance policies and benefit certificates.    Balder v. Middeke, Fuller v. Linzee, Paden v. Briscoe, and Johnson v. Merithew, supra.

According to said rule, Florence Yocum acquired no right to the fund in question as the survivor of her father, there being no proof that she did in fact survive him.    But unless she held some right to or interest in it, her administrator has no title to it now; for he has title only to the personal assets of her estate and those assets consist only of money, goods and chattels which were owned by her, or. to which she had a right of action either legal or equitable in her lifetime and at her death.    Blount v. Hamey, 43 Mo. App. (K. C.) 644. We do not lose sight of the doctrine that accretions after death to *property owned by a decedent,* or rights accruing afterwards by virtue of contracts, contingencies or conditions existing prior to his death, may sometimes constitute assets of his estate; but this claim does not fall within that class of assets, of which illustrations may be found in the following cases:   Foot v. Knowles, 45 Mass. 386; East v. Ferguson, 59 Ind. 169; Grant v. Bodwell, 78 Maine, 460; Daniel v. Holland, 27 Ky. 18.

The controlling question in the present case, then, is, did the certificate issued on the life of Mr. Yocum for the benefit of his daughter vest any present interest

or right in her during his life which passed to her administrator? It vested nothing either in possession or interest, but gave her only a chance or possibility, liable to be defeated at any time while her father lived, by his selecting another beneficiary. Persons named as the recipients of the bounty provided for in certificates of insurance in fraternal orders, are commonly subject to displacement at the pleasure of the insuring member, and the particular certificate in question, as well as the ordinances of the Royal Arcanum Society which were part of it, expressly permitted Mr. Yocum to displace his daughter as the payee of the policy in favor of some one else. She, therefore, neither acquired nor held a vested interest during his life by virtue of the certificate. She took nothing in possession, for the enjoyment of the fund could only be hers when he died and in case she survived him; she took nothing in interest, for the certificate did not give her a present right to the future possession of the fund, but only the chance of that right, contingent on her father not naming some other person as payee.

In Masonic Benefit Association v. Bunch, 109 Mo. 560, the Supreme Court said in an opinion written by Judge GANTT:

"All the authorities agree that the right of the members of benefit societies in the sums agreed to be paid at death is simply the power to appoint the beneficiary and that the constitution or charter and the by-laws are the foundation and source of such power. . . . And it is equally well settled that the beneficiary acquires no vested interest, nor has he any property, in the certificate. He has simply an expectancy which may be divested by the member by changing the beneficiary. . . . Nor is the right to change the benefit affected by the fact that the first beneficiary paid the assessments. . . . Nor does the possession of the certifi-

cate by the beneficiary deprive the member of the right to make the change.''

Certainly that language dissipates the notion that Florence Yocum got any right or interest by the issuance of the certificate on her father's life which vested in her while she lived and became assets of her estate, which her administrator is entitled to recover; and the ruling of the Supreme Court of this State on the question accords with the current of authority elsewhere, as will be seen by the cases cited in its opinion. See also Anthony v. Mass. Ben. Ass'n, 158 Mass. 322; Expressmen's Aid. Soc. v. Lewis, 9 Mo. App. (S. L.) 412; Hofman v. Grand Lodge, 73 Mo. App. (St. L.) 47; Grand Lodge v. Reneau, 75 Mo. App. (St. L.) 402; Lister v. Lister, 73 Mo. App. (K. C.) 99; Order Railway Conductors v. Koster, 55 Mo. App. (St. L.) 186. The case of United States Cas. Co. v. Kacer, Adm'r, 169 Mo. 301, which was decided by our Supreme Court on the same facts as are involved in the one at bar, supports this conclusion; for while the claim of the daughter's personal representative to the insurance was upheld in that case, the judgment was based on the fact that the policy, as construed by the Supreme Court, created, when issued, a vested interest in the daughter which prima facie passed to her administrator at her death, and could only be divested in favor of a rival claimant of the proceeds of the policy on proof by the latter that the daughter did not survive, and as that proof was not produced, her administrator was entitled to the fund. The reasoning of the opinion shows the decision turned on the fact that the policy vested a present interest in her on its issuance and did not merely raise an expectancy in her favor.

That unless Florence Yocum held a vested interest in the certificate or its proceeds during her life, her personal representative has no standing to recover it, is a

proposition that has been practically adjudged in some cases and directly adjudged in others.

In Taylor v. Diplock, 2 Phillim. Eccl. Rep. 261, the controversy was between the next of kin of a testator who had made his wife sole executrix and residuary legatee and the wife's mother, the testator and his wife having perished in a shipwreck and there being no satisfactory proof as to which survived. Of course if the wife had been proven or presumed to have survived, the administration and the property would have gone to her heirs, but in the absence of either presumption or proof to that effect the court said:

"Taking it to be that both died together, the administration is due to the representatives of the husband. I assume that they both perished at the same moment. . . . I am not deciding that the husband survived the wife."

Mason v. Mason, 1 Meriv. 308 (commented on favorably as striking "the true key-note" in 8 Alb. L. J. 187) is to the same effect, as is Goods of Murray, 1 Curt. Eccl. Rep. 596.

In Satterthwaite v. Powell, Id. 705, a wife, husband and four children were drowned together and the husband's next of kin demanded administration on the wife's estate, which he could only claim provided it was proved or presumed the husband survived her; otherwise her next of kin was entitled. The court said:

"Here the next of kin of the husband claims the property which was vested in the wife; that claim must be made out; it must be shown that the husband survived. The property remains where it is found to be vested unless there be evidence to show it has been divested. The parties in this case must be presumed to have died at the same time and there being nothing to show that the husband survived the wife, the administration must pass to her next of kin."

Durrant v. Friend, 5 De G. & S. 343, 21 L. J. Ch. N. S. 353, 16 Jur. 709, was where the dispute was over

the proceeds of an insurance policy on chattels specific-
ally bequeathed and the testator and the chattels were
lost together at sea in some unknown manner. In that
case, if the chattels were lost before the testator, the
insurance did not pass to the legatees of the property
by virtue of the will but became general assets of his
estate for his executors to take and distribute; but if the
testator died before the chattels were lost, the bequest
to the legatees became effective and the executors would
hold the insurance money for the legatees' benefit. The
court held that as the testator and goods perished to-
gether, the legatees never had any interest in them. To
the same effect are Coye v. Leach, 8 Met. 371; Newell v.
Michel, and Johnson v. Merithew, supra, and Machring
v. Mitchell, 1 Barb. Ch. 269. The foregoing and other
authorities which might be noticed, establish the propo-
sition that Florence Yocum's administrator is not enti-
tled to the fund in controversy, there being no proof
that she outlived her father and proof of that fact being
necessary to vest title to the money in her so that it
would constitute part of her estate at her death.

We come now to consider the claim of the nieces,
which is contested on the ground that the event on which
they were to become the beneficiaries of the certificate,
to-wit, the death of Florence before her father died and
his failure to designate a new beneficiary, never hap-
pened.

One of the laws above quoted (section 332) reads
that in the event of the death of all the beneficiaries
designated by a member before the decease of such
member, the benefit shall be paid to his relatives accord-
ing to the preceding section (324), and if the nieces can
only take on the happening of the very contingency
therein expressed, they must be excluded. Contracts of
this sort ought, like other contracts, to be construed so
as to carry out the intention of the parties if possible,
and there can be no doubt that both Mr. Yocum and the
Royal Arcanum Association understood and meant that

the proceeds of the certificate should go to Florence, if she survived her father, and if she did not, should be paid either to some other person selected by him, or, failing a selection, according to the rules of the order, which made part of the contract. Well-considered cases have held, in construing similar provisions in wills and insurance policies, that the contingency provided against by the phrase "die before" or like expressions, was the inability of the legatee or beneficiary first named to take, either by reason of prior or simultaneous death, and that construction stands to reason. Balder v. Middeke, Paden v. Briscoe, and Fuller v. Linzee, supra; see, too, the convincing dissenting opinion of Lord CAMPBELL in Wing v. Angrave, supra, and the English cases cited therein.

In Fuller v. Linzee, the Supreme Court of Massachusetts said:

"Mr. Fuller procured the contract in order to make a provision for his wife and children after his death. . . . His obvious intention was, that it should be paid to his wife if she should survive to take it, and to their children if she should not survive. That it was intended to be payable to the wife upon the contingency that she should survive him appears from the consideration that it was a provision for her support, which was not to come into existence until his decease, that it was not payable to her personal representatives, although no right of action could arise until his decease, and that it was to be paid to her children if she died before her husband."

In Paden v. Briscoe, the Texas Court of Appeals treated this point as follows:

"The result of the finding is that the beneficiary named at the time the policy was earned by the death of the husband, did not survive him, and was incapable of taking the proceeds of the policies. The purpose of

this contract of insurance entered into by the husband and the association, was to provide a fund for his wife, payable at his death, and in the event she was incapable of taking by reason of her death, then those heirs of the husband dependent upon him should take.    These are plain provisions and by-laws that enter into and form part of the contract of insurance.    The use of the words 'die before' in the contract of insurance, was evidently intended to mean that the beneficiary named must be dead and incapable of taking at the time the policy was earned by reason of the death of the husband.    The instantaneous death of both the husband and wife as successfully accomplished the inability of the wife to take as if she had died before.''

But we are not forced to rest the right of the nieces on that interpretation of the contract.    The by-laws of the order relating to the disposition of the proceeds of certificates in various contingencies are quite comprehensive, and in our judgment section 330 sets the matter at rest even if section 332 leaves it in doubt; for the former section does not provide for payment of the fund according to the classes enumerated in section 324, only in case a named beneficiary dies before the insuring member dies, nor does it relate solely to a failure of dependent beneficiaries, since it mentions a divorced wife, and wives are classed among relatives.    It was designed to meet any failure of a designated beneficiary to take, not caused by his dying before the member, which was provided for in other sections.    Among other provisons, section 330 contains this one:

''If any designation shall fail for illegality *or otherwise,* then the benefit shall be payable to the person or persons mentioned in class first, sec. 324, if living, in the shares and order of precedence by grades as therein enumerated.''

By a fair interpretation that clause confines the payment to the relatives of the insured as classified in section 324 whenever his designated beneficiary is in-

capable of taking for any reason, and the interpleading
nieces have a good standing by virtue of both the eighth
and twelfth grades of section 324; that is, they are
Yocum's nieces and his next of kin who would be dis-
tributees of his personal estate.

The by-laws of the order unmistakably intend that
no person shall ever come into the enjoyment of a fund
due on a benefit certificate except some one either re-
lated to or dependent on the member, and it is as en-
tirely consistent with their spirit and meaning to ad-
judge the money in dispute in this case to the nieces as
it would be inconsistent therewith to adjudge it to the
relatives of Florence Yocum on her mother's side, who
might not be of her father's kindred.   On this propo-
sition we approve the sentiment expressed in Balder v.
Middeke, supra:

"The fact that the organic law of the association
precluded any provision for benefits for any one not in
the relation of member of family, heir, blood relation,
dependent or affianced wife, gives weight to the conclu-
sion that the heirs of Mrs. Marty (designated benefici-
ary), who sustained no such relation to the insured, can
not successfully claim right to the benefit."

The point is made that Nettie Scanavi can not share
in the insurance money because she resides in Europe,
as the following regulation prohibits the payment of
benefits to aliens:

"Section 328.   No benefit shall be payable to any
person or persons permanently residing outside the
limits of the United States or the Dominion of Canada."

That section relates to the designation of a bene-
ficiary by a member who procures a certificate and pro-
hibits him from naming as such any foreigner except
a resident of Canada.   It expresses a policy of the order
which we apprehend the order could waive in any case
if it chose and issue a certificate payable to a foreign
resident.   But it is not and does not purport to be a
restriction on the distribution of the fund among the

relatives of a member according to section 324, when his designated beneficiary is dead at his death and can not take. Besides, no question is made about Mrs. Scanavi's right by either the society or her sister, Gertrude Harris, who would take if she could not, and the administrator of Florence Yocum has no interest in establishing her incapacity.

We hold, therefore, that the proceeds of the policy should be paid to the two nieces of Harry C. Yocum and reverse the judgment and remand the cause with the direction to the circuit court to enter judgment in accordance with this opinion. *Bland, P. J.*, writes a separate opinion; *Barclay, J.*, concurs in the result.

SEPARATE OPINION.

BLAND, P. J.—I agree that at common law, where two or more persons perish in a common disaster, there is, in the absence of all evidence, no presumption of survivorship, and this is so irrespective of their ages, sex, or condition of health and strength, nor is there any presumption that they died simultaneously. That the burden is on the party asserting survivorship of either party as a basis of his claim to prove it and that if he fails to make the proof, his claim must fail. See extended note to the case of In re Maria Willbor et al., 51 L. R. A. 863, in which all the English and American cases are carefully reviewed. United States Casualty Co. v. Kacer et al., 169 Mo. 301, 69 S. W. 370.

I agree also that Florence Yocum had no vested interest in the certificate of insurance at the happening of the disaster in which both she and her father perished, and that to entitle her administrator to the fund the onus was on him to show by pertinent evidence that she survived her father. On the other hand, to entitle the nieces to the fund, under the provision of section 331 of the by-laws, as next of kin of the insured, the onus was on them to show that Yocum survived his daughter, or that they both died at the same moment.

In Paden v. Briscol, 81 Tex. 563, the trial court found as a fact that the husband and wife (the insured and beneficiary) died at the same instant.

In Balder v. Middeke, 92 Ill. App. 227, to arrive at a conclusion the court presumed that the insured and beneficiary died at the same moment, and on this presumption adjudged the fund to the next of kin of the insured instead of the administrator of the wife.

In Coulter v. Linzee, 135 Mass. 468, where the husband and wife (insured and beneficiary) perished in a common disaster, leaving no children, it was held that the administrator of the wife should not be charged with the fund collected on the insurance certificate and that as the fund had not been applied by the company to any particular person who might be entitled to it, it belonged to the estate of the husband.

In Cowan, Adm'r, v. Lloyd, Adm'r, 10 L. R. A. (Md.) —, Hoopes, his wife and their two children perished in the Johnstown flood, May 31, 1889. A benefit certificate had been issued to Hoopes by the order of the Golden Chain, a benefit society, in which his wife was designated as beneficiary. The company paid the insurance into court. On an interplea for the fund between the administrators of the estates of Hoopes, of his wife and of the two children, it was ruled there was no presumption of survivorship or priority of death, nor that they all died at the same moment; that the fund was not assets of Hoopes' estate; that there was no evidence that the beneficiary died in the lifetime of Hoopes, and no presumption could be appealed to to supply the place of such evidence; that if it should be granted that the children expired first there was nothing to indicate that Mrs. Hoopes' death preceded that of her husband; that only in the event of her death in his lifetime would the fund go over to some one else, as her title as selected beneficiary would only be discharged

by affirmative evidence that her husband survived her, and concluded that both the administrator of Hoopes' estate and the administrator of the estate of the children had failed to establish any claim to the fund, and ruled that as Mrs. Hoopes was named as beneficiary, "her representative had a prima facie right to the fund." As Mrs. Hoopes had no vested interest in the certificate of insurance during the life of her husband and could have none, unless she survived him, it is difficult to see upon what ground the court concluded that her administrator had a prima facie title to the fund, in the absence of any evidence or presumption that she did survive him.

In Balder v. Middeke, supra, no adjudication of the fund could have been made had not the court invoked the presumption that the husband and the wife perished at the same moment. This presumption was arbitrarily made to afford the court a way of escape out of the difficulty that confronted it, but is opposed to all the well-considered cases both in England and in this country. There was no more reason for presuming that both died at the same moment than there would have been to presume that the husband survived the wife, or that the wife survived the husband. To presume at all, in such circumstances, is to speculate on the comparative tenacity to life of different persons in the same death-dealing peril.

Under the contract of insurance and the laws of the State the fund can not go to Mr. Yocum's executor. I think, had the company paid the insurance to either of the parties, the other could not have recovered it from the company, or from the party to whom it was paid, for the reason there was no evidence whatever that Mr. Yocum survived his daughter, or that she survived him, and none that they died at the same moment. The company did not, as it might have done, select the beneficiary, but had committed the selection to the court, by paying the fund into court.

The claim of the administrator of Florence Yocum's estate to the fund must fail, because there is no evidence whatever that she survived her father and no presumption can be appealed to to supply the place of such evidence.

Section 331 of the by-laws does not aid the nieces for the reason there is no evidence that Yocum survived his daughter, or that they died at the same time, and no presumption can be invoked to supply such evidence.

I think, however, that the nieces are entitled to the fund under the provision of section 330, on the ground that the designation made by Yocum has failed, for want of proof that the person designated (Florence Yocum) survived him, and agree that the fund should be paid to them.