DENNIS J. SULLIVAN, next friend, &c., et al.

*v.*

JOHN F. MARONEY et al.

[Decided June 11th, 1909.]

1. An assignment by insured of a life policy payable to her children, if they survived her, which they did, otherwise to her estate, was ineffectual against her children, who alone could assign their interest.

2. A life policy being made payable to certain beneficiaries, their interest can be divested in favor of other beneficiaries only in the manner provided by the policy for such a change; so that, the method provided by the policy for change of beneficiaries not being pursued in any respect, an instrument, in form simply an assignment, signed by insured, to whose estate the policy was payable only if her children, the beneficiaries, did not survive her, which was not the case, could not change the beneficiaries.

3. The rights of parties between themselves as to the proceeds of a life policy, depending on whether there was a change of beneficiaries, are not affected by the insurance company not contesting the question of change of beneficiary, but admitting its liability to some one.

Heard on bill, answers, replications and proofs in open court.

This is a bill filed by the next friend of four infants to secure the proceeds of a life insurance policy.

The defendants are the life insurance company and those who claim adversely to the complainants. The life insurance company defaulted, and a decree *pro confesso* has been taken against it. The facts are stated in the opinion.

*Mr. J. Merritt Lane,* for the complainants.

*Mr. Mark A. Sullivan,* for the answering defendants.

GARRISON, V. C.

John F. Maroney was a life insurance agent doing business in Jersey City. Edward and Margaret Cahill, husband and

wife, were people of the working class living in Jersey City. Marie Schaefer, subsequently married to McCabe, was a sister of Maroney's wife.

In January of 1906, Maroney induced the Cahills to take out $12,000 worth of life insurance, $6,000 on the life of each. These policies were as follows:  On the life of Margaret, $3,000 in the Equitable Insurance Company, payable to Edward; $2,000 in the State Life Insurance Company of Indianapolis, payable to the four children of the parties (the complainants) ; $1,000 in the State Life aforesaid, payable to Edward.  On Edward's life, $3,000 in the Equitable Insurance Company, payable to Margaret; $2,000 in the State Life Insurance Company of Indianapolis, payable to Margaret; $1,000 in the State Life aforesaid, payable to Margaret.

The premiums on all these policies, taken together for the first year, amounted to $315.  Maroney, who attended to all of the business, and acted as agent in the entire transaction, testifies that he secured the money to pay the premiums from Marie Schaefer (now McCabe) by an agreement between her and the Cahills, which was that she was to pay these premiums and was to have assigned to her all of the policies excepting the policy for $1,000 on the life of Edward, payable to Margaret, issued by the State Life Insurance Company.  He also says that she was to pay $35 more than all of the premiums—that is to say, she was to pay $350 instead of $315, and that this extra $35 was to go to Mrs. Cahill; and further, he says that it was agreed that she should pay all of the debts of Margaret Cahill which were owed by the latter at the time of her death; and further still, he said that, as part of ,the agreement, $200 out of any insurance collected on the life of Margaret was to be paid to Edward.  He asserts that he obtained the money to pay these premiums from Miss Schaefer shortly after the time that the policies were taken out in 1906, and that it was at that time that the agreement was made.

In January of 1907 Mrs. Cahill was seriously ill of the disease of which she died on the 2d of March, 1907, and while in bed she signed assignments of the policy in question, and at or about the same time Edward Cahill signed assignments to Marie

Schaefer of the $3,000 policy in the Equitable Life and the $1,000 policy in the State Life, on the life of Margaret, payable to him.

No assignments were ever procured from Margaret on the $3,000 policy on Edward's life payable to her, issued by the Equitable, or of the $2,000 policy in the State Life on the life of Edward, payable to her, nor of the $1,000 policy in the State Life on the life of Edward, payable to Margaret. The last-named policy was not to be assigned, but was agreed to be kept up for the benefit of Margaret, according to Maroney's testimony.

This controversy concerns the $2,000 policy in the State Life Insurance Company, of Indianapolis, Indiana, issued on the 16th of January, 1906, on the life of Margaret, payable to the four children.

Although Maroney and Schaefer each testify that the agreement was made and the premiums paid over by her to Maroney, and by Maroney to the company, in January or February of 1906, it is very difficult for me to believe this. I incline to the opinion that no payment was made to the company for the first year—probably Maroney's commissions were sufficient to at least satisfy the first year's premiums—and the fact, I believe, is that the first payment was actually made at the beginning of the second year, which was the time when the assignment was obtained.

Undoubtedly these policies were taken out by Maroney in a spirit of speculation. There is not the slightest pretence that the Cahills were ever in the position to take out any such amount of insurance, or to pay for any insurance at all out of their meagre means. At the time that the assignments were obtained from Margaret Cahill and from Edward Cahill, Margaret was a very sick woman, and was dying, and shortly afterwards died. It will be observed that assignments were only obtained for those policies which were upon her life—no assignments were obtained upon the policies upon the life of Edward.

Part of the agreement, Maroney says, was that the debts due by Margaret Cahill at her death should be paid by Miss Schaefer, as a portion of the consideration; and he also says that it was agreed that $200 out of the insurance collected upon Margaret's

death should go to Edward, her husband. It is inconceivable to me that any such agreements were made in January of 1906, when, so far as it appears, Margaret was in good health and there was no reason to suppose that she would either die soon, or would die before her husband.

However this may be, the taking out of the policies was a pure speculation, as was the participation therein of Miss Schaefer. As has been before stated, Margaret Cahill died on the 2d day of March, 1907, and the policy of $3,000 on her life in the Equitable has been collected by Miss Schaefer, as has the $1,000 policy in the State Life. It will be recalled that each of these policies on the life of Margaret were payable to Edward, and were by him assigned in January of 1907, by virtue of the alleged agreement of January, 1906, to Miss Schaefer.

The assignment of the policy in suit is in the following terms:

"FORM OF ASSIGNMENT OTHERWISE THAN AS COLLATERAL SECURITY. *To be attached to and retained with the policy* for use as evidence when required.

"For one dollar, to me in hand paid, and for other valuable consideration (the receipt of which is hereby acknowledged) I hereby assign, transfer and set over all my right, title and interest in Policy No. 149,191 on the life of (myself) Margaret Cahill issued by The State Life Insurance Company of Indianapolis, Indiana, and all money which may be payable under same to Marie Schaefer of Hoboken, N. J., whose P. O. address is 612 Washington Street, and for the consideration above expressed I do also for my executors and administrators guarantee the validity and sufficiency of the foregoing assignment to the above-mentioned assignee, her executors, administrators and assigns; and the title to the said policy will forever warrant and defend.

"In Witness Whereof, I have hereunto set my hand and seal, this 19th day of January, 1907.

"MARGARET CAHILL.
"EDWARD CAHILL."

The policy provisions which are material are in the following language:

"The State Life Insurance Company of Indianapolis, Indiana, hereby insures the life of Margaret Cahill, of Jersey City, State of New Jersey (hereinafter called the insured) and agrees to pay the sum of Two thousand dollars at the Home Office of the Company at Indianapolis, Indiana, to Dennis, Edward, Katie and William Cahill, her children, share and share alike (or to such other beneficiary or beneficiaries as may be

designated by the insured as hereinafter provided), if living, otherwise to the insured's executors, administrators or assigns, upon receipt and approval of proofs of the death of the insured, this Policy being then in force, less any indebtedness of the insured or beneficiary to the Company."

"*Assignment.* This Policy may be assigned upon written approval of the President, but the Company will not assume any responsibility for the validity of any assignment."

"*Change of Beneficiary.* The insured may, at any time during the continuance of this Policy, provided the Policy is not then assigned, and subject to the rules of this Company regarding assignments and beneficiaries, change the beneficiary or beneficiaries by written notice to the Company, at its head office; such change to take effect on the endorsement of the same on the Policy by the Company."

The bill sets out the issuance of the policy; the death of Margaret Cahill; the fact that the policy is in the possession of John Milton, who claims to hold the same on behalf of Marie Schaefer, now McCabe, and John F. Maroney; and that there has been no valid assignment or valid change of beneficiary which, in law, deprives the complainants (the four children named in the policies as beneficiaries) of their rights thereunder, and prays that it may be so adjudged.

The defence rests upon' the assignment heretofore quoted.

It will be observed from a reading of the policy that the contract was, upon the death of Margaret Cahill, to pay the insurance money either to the four children, if they were living at the time of their mother's death, otherwise to the mother's executors, administrators or assigns.

There were, therefore, always two sets of interests in this policy—the beneficiaries (who would get the money if they were living at the death of the insured), and the representatives of the insured (to whom the money would come if the insured outlived the beneficiaries). Each of these interests was undoubtedly subject to assignment. Neither one could, in my view, assign anything excepting that which would come to that one; and the assignment of neither could possibly impinge upon the rights of the other. In other words, the beneficiaries, if of age, could undoubtedly assign their interests under the policy, and the insured could undoubtedly, as against her estate and so as to bind it, assign that interest—*i. e.,* the interest which would come to her estate.

It is provided that the policy may be assigned upon written approval of the president, and it is claimed by the complainants that this assignment was not approved in writing by the president, and this is so. It might be material to determine this question if it affected any issue in the suit, but in my view it does not. It is not necessary for me to determine whether this assignment would be effectual against the personal representatives of Margaret Cahill, because in the present juncture they have no interest. The four children outlived their mother, and, therefore, are entitled to the proceeds of the policy as against the representatives of the mother, or anyone to whom the rights of such representatives had been assigned. It is, therefore, immaterial to determine whether this assignment should be recognized in default of the written approval of the president of the company, because, whether recognized or not, it does not affect the issue.

The authorities are numerous—and, with the exception of Wisconsin, unanimous—that in an ordinary life policy the interest of the beneficiary is vested and cannot be divested by an assignment of the policy by the insured. *49 L. R. A. 737.*

It seems perfectly plain, upon principle, that where the contract of A is to pay B upon the death of C, that C may not, by any assignment of that contract, cause the money due thereunder to be paid to anybody but B, or B's assignee. And so the cases hold. See the cases in the notes last cited at *p. 740;* to which add *Cyrenius* v. *Mutual Life Insurance Co., 145 N. Y. 577;* and a statement to the same effect in *Golden Star Fraternity* v. *Martin (Court of Errors and Appeals, 1896), 59 N. J. Law (30 Vr.) 216.*

The contention of the defendants, however, is that this assignment must be treated as if it effected a change of beneficiaries, and substituted in the place of the four children (the beneficiaries named in the policy) Marie Schaefer (the person named in the assignment).

I cannot accede to this argument, and, in fact, do not think that there is anything to support it. The paper, in form, is an assignment. It is made by a person who has an assignable interest, and carries that interest. The interest, as has been pointed

out, was contingent but assignable. It does not purport in any way to make a change of beneficiaries, or to affect their interests. The method of change of beneficiary is pointed out in the contract, and that method was not pursued in any respect. It is not even attempted to be shown that it was effected according to the rules of the company, as required, or that any written notice thereof was given to the company, or that it took effect by endorsement on the policy of the company, all of which are requisites.

I think it entirely clear from the authorities that where a contract of insurance is made payable to certain beneficiaries their interests therein can only be divested in favor of other beneficiaries by changing the contract in the manner in which the contract points out that it must be changed to effect that result. *American Legion of Honor* v. *Smith* (*Vice-Chancellor Van Fleet, 1889*), *45 N. J. Eq.* (*18 Stew.*) *472; Travelers' Insurance Co.* v. *Grant* (*Vice-Chancellor Pitney, 1896*), *54 N. J. Eq.* (*9 Dick.*) *217; A. O. U. W. of New Jersey* v. *Gandy* (*Vice-Chancellor Grey, 1902*), *63 N. J. Eq.* (*18 Dick.*) *692; Pennsylvania Railroad Co.* v. *Warren* (*Vice-Chancellor Bergen, 1905*), *69 N. J. Eq.* (*3 Robb.*) *706.*

And I do not find that there is anything in the contention of the defendants that the company, by not contesting the question concerning the change of beneficiaries, has altered in any way the rights of the parties as between themselves. If the provisions required by the contract, or by the charter, constitution, by-laws or statute laws regulating a beneficial order, which make part of their contracts, have not been complied with, the change has not taken place—the properly named beneficiaries have not been displaced; and the fact that the company, or the order, pays the money into court, or admits its liability to pay, cannot affect the question. The question always remains, who are the beneficiaries—and they must be named in accordance with the contract, including therein, of course, that which is held to be part of the contract in the cases where the whole contract is not comprised in one paper, certificate or policy.

This is directly decided in our own court (*A. O. U. W. of New Jersey* v. *Gandy, supra,* and *Pennsylvania Railroad Co.* v. *War-*

*ren, supra*), and is in accordance with sound reasoning and other authorities. *Freund* v. *Freund, 218 Ill. 189; 75 N. E. Rep. 925; Sangunitto* v. *Goldey, 84 N. Y. Supp. 989; 25 Cyc. 893, 894.*

Equities, of course, may arise which prevent the application of the normal rule. (For such an instance see *Supreme Council Catholic Benevolent Legion* v. *Murphy (Vice-Chancellor Pitney, 1903), 65 N. J. Eq. (20 Dick.) 60.*) But they emphasize and do not weaken the rule.

The righteousness of the decision thus far announced would seem to me to be undoubted, were it not for the opinion in the case of *Landrum* v. *Knowles (Court of Errors and Appeals, 1871), 22 N. J. Eq. (7 C. E. Gr.) 594,* and the construction that may have been, or may seem to have been, placed upon it in the following cases: *De Ronge* v. *Elliott (Vice-Chancellor Dodd, 1873), 23 N. J. Eq. (8 C. E. Gr.) 493; Brown* v. *Murray (Vice-Chancellor Stevens, 1896), 54 N. J. Eq. (9 Dick.) 596; Locomotive Eng. Association* v. *Winterstein (Vice-Chancellor Reed, 1899), 58 N. J. Eq. (13 Dick.) 198; Spengler* v. *Spengler (Vice-Chancellor Stevens, 1903), 65 N. J. Eq. (20 Dick.) 178.*

It becomes necessary, therefore, to carefully consider the case of *Landrum* v. *Knowles,* and I have taken occasion to get excerpts from the original papers and briefs so as to get at the very point decided.

The policy in that case recited that in consideration of the premium paid by Lucy A. Landrum and of the annual premium to be paid thereafter, they did assure the life of Samuel Landrum, her husband, in the amount of two thousand dollars,

"for the sole use of the children of the said Lucy and Samuel * * * And the said Company do hereby promise and agree to and with the said assured, their assigns, well and truly to pay or cause to be paid the said sum insured to the said assured, their assigns * * * at the death of Samuel."

It recites that the policy is accepted "by the assured" upon certain conditions. It is further recited that "in case the said Lucy A. Landrum shall not pay the said annual premiums * * * the said company shall not be liable to the payment of the sum insured." It is recited in the policy "if assigned, notice

to be given the company, and the party to whom the policy is transferred must sign all premium notes with the assured."

It is quite evident from the reading of this policy that Lucy A. Landrum was the assured; and with this in mind, I think we can clearly understand the opinion of the court of errors and appeals, and clearly see that it does not apply to a different kind of insurance contract, and does not run counter to. the .well-nigh unanimous decisions regarding assignments of policies made payable to beneficiaries. The policy was taken out in 1850. In 1860 Lucy Landrum, with the assent of her husband, assigned this policy to Knowles in payment of debts due to him by her husband. Lucy paid the premiums due on the policy up to 1860. Knowles paid the premiums afterwards for nine years, when Landrum died. The chancellor decreed that the children were entitled "to the cash value of the policy of insurance in question * * * at the time the policy ceased to be kept alive by the payment of the premiums by Lucy A. Landrum * * *" and that the balance of the money owing on the policy was to be paid to Knowles. This was affirmed by the court of errors and appeals upon the theory that, from the facts, it was evident that Mrs. Landrum, the assured, took out this policy upon the life of her husband, payable to herself, for the use of her children as a gift to the children, and that so long as she kept up the payments she was continuing to increase, so to speak, or keep alive, the gift to the children; but that when she assigned this policy, in which she was the assured, she thereby indicated her intention no longer to continue the gift, and only so much would be allotted to the children as had then been given —that is, the cash surrender value of the policy at that time.

Many, if not all, of the cases which comment upon this case of *Landrum* v. *Knowles* make the mistake of supposing that the money was payable to the children, and the chief-justice, himself, in his opinion, makes this mistake. The policy plainly shows that the money was not to be paid to the children, but was to be paid to "Lucy A. Landrum, the assured." The policy recites that it is for the sole benefit of the children, and much, if not all, of the reasoning of the case revolves around this difference. Lucy A. Landrum having taken out a policy in which

she is the assured, and which provides that the money is to be paid to her, as the assured, has it stated in the policy that it is for the benefit of her children. It may well be that one who is thus constituting one's self a voluntary trustee will only be held to be trustee to the extent that the gift is effectuated; but the reasoning which would apply to such a situation would not apply to a case where the policy was payable to the beneficiaries. In such a case, as has been before pointed out, no assignment by anyone excepting the beneficiaries can affect their interest, and their interest can only be changed by the substitution of new beneficiaries in accordance with the terms of the contract or the laws of the order, if it be a beneficial order.

There was no point in the brief for the children in the *Landrum Case* that this policy was, as against them, not assignable —in fact, in counsel's third point he concedes unquestionably that it was assignable. The point he made was that the assignee stood in the place of the assignor as trustee for the children. However this may be, I am clear that the decision in *Landrum* v. *Knowles* should not be held to extend any further than the exact facts comprised in it. If we confine that case to the right of a person to whom the money is to be paid—the assured, in other words—to assign that interest, we are at liberty to place New Jersey in harmony with all other jurisdictions, so far as I know, excepting Wisconsin, in the holding that an assignment of an insurance-policy made payable to beneficiaries by any other persons than the beneficiaries cannot affect their interests.

That this is the proper holding seems to me to be beyond dispute.

The complainant makes the further contention that Marie Schaefer had no insurable interest in the life of Margaret Cahill, and that, therefore, the assignment is void. In other jurisdictions there is authority for this contention, and a very strong argument can be made that such, under the authorities, should be the law of New Jersey; but I find it unnecessary to consider or decide this question because of my opinion with respect to the other points involved, which is dispositive of the case.

In conclusion, I find that the assignment, if considered good, notwithstanding that it was not upon "the written approval of

the president," carries only the interest which the assignor had, and that was the interest, as against her own estate, to receive the payment if she outlived her children. That assignment was not in any sense a change of beneficiary, and cannot be so considered.

Since the insurance company has, by not answering, and by the effect of the decree *pro confesso,* admitted it owes the money, the decree should provide for the payment of that money to the complainants, with costs against the answering defendants.