299 F.2d 185
 97 A.L.R.2d 1386
 Eleanor STRUBBE, Plaintiff-Appellee,
v.
Adolph SONNENSCHEIN, Isidor Sonnenschein and Harry L.
Bermack, co-partners doing business as Stratford
Factors, and Metropolitan Life Insurance
Company, Defendants-Appellants.
 No. 46, Docket 26906.
 United States Court of Appeals Second Circuit.
 Argued Sept. 26, 1961.
Decided Jan. 26, 1962.
 
 Irving J. Seaver, New York City (Samuel Gutterman, New York City, on the brief), for defendants-appellants Sonnenschein and Bermack.
 Edward T. Post of Tanner, Friend, Kinnan & Post, New York City, for defendant-appellant Metropolitan Life Ins. Co.
 Samuel Slote, Edwin R. Wolff, New York City, for plaintiff-appellee.
 Before LUMBARD, Chief Judge, and FRIENDLY and SMITH, Circuit Judges.
 SMITH, Circuit Judge.
 
 
 1
 This is an action by Eleanor Strubbe, the wife of H. Ernest Strubbe, Sr. who was a New Jersey resident and president of Wolf Oil & Gas Company (Wolf), a New Jersey corporation, not a party, against Adolph Sonnenschein, Isidor Sonnenschein, and Harry L. Bermack, doing business in New York as Stratford Factors (Stratford), and Metropolitan Life Insurance Company (Metropolitan), which is an insurance company organized and existing under the laws of the State of New York and maintaining its principal office in New York City.
 
 
 2
 The action sought reinstatement and payment to plaintiff of the full amount of six life insurance policies on the life of H. Ernest Strubbe, on which Metropolitan had made a non-recourse loan of $32,508.51 to Stratford for virtually the full cash surrender value. Alternatively it sought recovery against Stratford for the amount of the loan. Metropolitan sought to recover over against Stratford. The District Court for the Southern District of New York, Judge Clancy, found for the plaintiff against Metropolitan, dismissed the claim of plaintiff against Stratford, and gave judgment over for Metropolitan against Stratford for the full amount paid Stratford as a nonrecourse loan. Metropolitan appealed from the judgment rendered against it in favor of plaintiff, Stratford from the judgment against it in favor of Metropolitan. Plaintiff did not appeal the dismissal of its claim against Stratford. Affirmed on Metropolitan's appeal. Modified and affirmed as modified on Stratford's appeal.
 
 
 3
 H. Ernest Strubbe, the husband of plaintiff, negotiated a loan for Wolf from Stratford, and pledged as collateral six life insurance policies issued by Metropolitan on his life. Two of the six policies had been proviously assigned to plaintiff and notice thereof given to Metropolitan. She was revocable beneficiary of the remaining four.
 
 
 4
 H. Ernest Strubbe, now deceased, forged or caused to be forged the signature of his wife to the collateral assignments for the loan value of said policies, and the policies, which were in his possession, together with the collateral loan assignments were delivered to Stratford on February 27, 1956 by Kaye, an officer of Wolf who is not a party to this action. The signatures were regular on their face and purported to be acknowledged before a notary public in the State of New Jersey, February 27, 1956.
 
 
 5
 Upon receipt of the forms, Stratford submitted them to Metropolitan at its Public Inquiry Bureau in New York City where John Debus, an employee of Metropolitan, who compared the signatures in a cursory manner, placed on the assignment forms the Secretary's stamp which indicates they were recorded and filed and returned the duplicates to Stratford.
 
 
 6
 On February 28, 1956 a loan agreement was entered into between Stratford, the lender, and Wolf, the borrower, for $25,000. On that day a certified check for $7,000 was drawn payable to Lerner Associates and endorsed, 'Payment Approved, Wolf Oil and Gas Co., Inc., H. Ernest Strubbe, Sr.' February 29, 1956 a $5,000 check was drawn payable to Wolf and deposited in Wolf's account. On March 1, 1956, Bermack, at Kaye's request, drew and delivered to Kaye two checks, one payable to Wolf for $4,000 and the other to Irving Trust Company, also for $4,000, which was to enable Kaye to obtain a bank draft. The trial court found that there is no evidence that the remaining $5,000 ever reached Wolf's treasury or benefited Wolf in any manner. A $5,000 check drawn March 9, 1956 payable to Bankers Trust Company pursuant to instructions from Kaye, which requested Stratford to take delivery of 43,000 shares of Stanwood Oil Corporation Capital Stock, was found by the trial court to be part of an unrelated transaction, which finding is challenged on appeal by Stratford. The $32,508.51 total which Stratford alleged to be in default and for which it obtained the nonrecourse loan was arrived at by adding a $7,500 commission charged on the making of the loan six $1,000 monthly charges, and miscellaneous charges (discussed below insofar as they are disputed), less credit for payments made by Wolf. The trial court found that as part of the claimed debt of $32,508.51, charges of $500, $150, and a total of $364.34 in miscellaneous charges were unauthorized by the loan agreement. These findings are likewise challenged by Stratford. In addition, the trial court noted a charge of $1,000 in the month of January 1957 which was found to be unauthorized, and a check to Stratford for $8,000 drawn by Wolf and dated April 12, 1956 which does not appear in the ledger sheets and concerning which no finding was made.
 
 
 7
 The last of four demands by Stratford for payment, and notice of intention to liquidate the loan, was by letter dated November 20, 1956 after Wolf failed to pay the note on August 27, 1956, the maturity date. On January 14, 1957 Stratford notified Metropolitan of the default and demanded payment of the cash surrender values of said policies. Metropolitan suggested to Strubbe that payment be made to Stratford in the form of a loan so as to conserve the life of the policies.
 
 
 8
 On January 30, 1957, three letters were exchanged between Metropolitan and Stratford after Stratford had indicated its willingness to accept payment in the form of a non-recourse loan. Metropolitan asked of Stratford assurances that Stratford had 'complied with that portion of the assignment which requires that the assignee * * * shall have mailed * * * to the insured' notice of the default and of its intention to exercise its rights under the assignment. This should be compared with the paragraph of clause E(2) of the assignment forms which requires notice to the 'undersigned,' which would have included Mrs. Strubbe. On the same day, Stratford replied that notice had been given to 'all interested parties.' A policy loan in the amount of $32,508.51 was thereafter made by Metropolitan on a nonrecourse basis on February 1, 1957. Plaintiff first learned of this transaction and the forgeries in the summer of 1957.
 
 
 9
 Judge Clancy, who tried the case without a jury, found that plaintiff's interest could not be diminished by reason of forged assignments and ordered Metropolitan to restore the policies to their full value. The court gave judgment for appellant Metropolitan on its cross claim against appellant Stratford for the amount of the loan, based upon what it found to be Stratford's knowingly flase representation, calculated to induce Metropolitan to make the loan, that all interested parties had been notified.
 
 I.
 
 10
 The first question requiring determination with respect to Mrs. Stubbe's action against Metropolitan is one of conflicts of laws. New Jersey holds that a revocable beneficiary has a vested interest in the policy, during the life of the assured and that no valid assignment of such policies can be made unless the beneficiary is changed in accordance with the contract of insurance, or the beneficiary joins in the assignment. Consequently, if New Jersey law controls, the assignments of the four policies naming plaintiff as revocable beneficiary were void as to her, as well as the two policies of which she was assignee. Sullivan v. Maroney, 76 N.J.Eq. 104, 73 A. 842 (1909), aff'd 77 N.J.Eq. 565, 78 A. 150 (1910). Under New York law, which appellants contend is controlling, the revocable beneficiary does not have a vested interest in the policy and a valid assignment can be made without the consent of, or notice to, the revocable beneficiary. Davis v. Modern Industrial Bank, 279 N.Y. 405, 18 N.E.2d 639, 135 A.L.R. 1035 (1939).
 
 
 11
 The Strubbes were residents of New Jersey and Mr. Strubbe applied for the insurance policies in New Jersey. Premiums were paid by Strubbe from his residence in that state. The policies were serviced by Metropolitan's Irvington, New Jersey office. They were regarded by Metropolitan as being 'in force' in New Jersey districts of the company.
 
 
 12
 Metropolitan is a New York corporation having its home office in New York. The policies provide for payment of the face amounts at the home office and premiums were primarily payable there, although there is a provision that payment may also be made to any 'authorized Agent of the Company.' An election of settlement option or an assignment must be filed at the home office before it becomes effective.
 
 
 13
 This court is bound to determine the law applicable in accordance with the choice of law rule of New York, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941). Appellants rely upon Jones v. Metropolitan Life Insurance Co., 158 Misc. 466, 286 N.Y.S. 4 (App.Term 1st Dept. 1936) which held that New York law governed the admission of evidence tending to establish a waiver by the insurance company, in a suit on a contract of life insurance between a New Jersey insurer and a New York insured.
 
 
 14
 The cases hold that a federal court is bound to apply the law of the state as found by an intermediate appellate court in the absence of 'more convincing evidence of what the state law is.' Fidelity Union Trust Co. v. Field 311 U.S. 169, 178, 61 S.Ct. 176, 85 L.Ed. 189 (1940). See Six Companies of California v. Joint Highway District No. 13 of Calif., 311 U.S. 180, 188, 61 S.Ct. 186, 85 L.Ed. 114 (1940); Stoner v. New York Life Ins. Co.,311 U.S. 464, 61 S.Ct. 336, 85 L.Ed. 284 (1940).
 
 
 15
 'Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.' West v. American Telephone and Telegraph Co., 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940).
 
 
 16
 Although the earlier decisions, particularly Field, may have inclined toward a mechanical approach in determining state law, it appears today that a federal court is bound to consider all relevant factors. Bernhardt v. Polygraphic Company of America, 350 U.S. 198, 205, 76 S.Ct. 273, 100 L.Ed. 199 (1956). For, so 'long as there is diversity jurisdiction, 'estimates' are necessarily often all that federal courts can make in ascertaining what the state court would rule to be its law.' Ibid., at 209, 76 S.Ct. at 279 (Frankfurter, J. concurring).
 
 
 17
 The vitality of Jones v. Metropolitan, supra, decided by the intermediate appellate court of New York, insofar as it might be deemed to be here controlling, is cast into serious doubt by contrary lines of authority in sister states, as was the case in Bernhardt, as well as by a later decision of the New York Court of Appeals which held that the forum should apply the law of 'the jurisdiction 'most intimately concerned with the outcome of the particular litigation." Auten v. Auten, 308 N.Y. 155, 160, 124 N.E.2d 99, 102, 50 A.L.R.2d 246 (1954). The New York court rejected a rigid or mechanical approach such as the place of contracting or the place of performance in favor of an application of the 'proper law' as disclosed by a consideration of the relevant contacts in each case.
 
 
 18
 In Jones, on the other hand, the court was of the opinion that New York law governed the question whichever choice of law rule was applied. The place of closest connection is mentioned in the last paragraph of the opinion without any explanation as to why New York's contacts were more significant than the domicile of the insured and the beneficiary. Although Auten cited Jones, that was not done in approval of its result, but merely as support for the proposition that the grouping of contacts theory had been recognized before.
 
 
 19
 New Jersey being the state where the application for insurance was made and the policies serviced, as well as the domicile of the insured and the beneficiary from the time the policy was taken out until the insured's death, we think that the New York Court of Appeals would find that New Jersey was the jurisdiction with the most significant contacts with the matter in dispute. Accord, Restatement of the Law, Second, Conflict of Laws, Tentative Draft No. 6, 346(h). Applying the law of New Jersey we hold that the plaintiff had a vested interest in the four policies in which she was named as the revocable beneficiary as well as the two which were previously assigned to her.
 
 II
 
 20
 There remains Metropolitan's contention that the disclaimer of liability clauses 'as to the validity and sufficiency of any assignment' in five of the policies, and 'as to the validity of any assignment' in the other one, protect the company when it pays an assignee in nonnegligent reliance upon a forged assignment. But we conceive the clause to have reference to liability to assignees only, and not to the owners or beneficiaries of the policy. New York Life Insurance Company v. Federal National Bank of Shawnee, 151 F.2d 537 (10 Cir. 1945), relied on by Metropolitan, wherein an instrument was executed by an incompetent was concerned with a voidable rather than a void instrument. The interpretation of the quoted clause to mean that the company shall not become liable by virtue of the assignment which for any reason was invalid was unnecessary to the decision and, if applied to wholly void assignments would obviously be outside the intention of the parties. The judgment for plaintiff against Metropolitan is affirmed.
 
 III
 
 21
 Stratford appeals from so much of the judgment as awards Metropolitan recovery of the amount paid Stratford based upon the allegedly fraudulent misrepresentation that 'all interested parties' had been given notice contained in Stratford's letter of January 30, 1957 when in fact Mrs. Strubbe had not been notified. This letter was written in response to Metropolitan's letter of the same day demanding assurances only that the 'insured' had been given notice. The trial court concluded that Stratford must have understood this to incorporate, by reference, paragraph E(2) of the assignment which requires notice to the 'undersigned.' But, although Metropolitan could insist on the performance of paragraph E(2), it was not required to do so;[1] and being capable of waiving performance in whole it could certainly do so in part. Moreover, if Stratford was ignorant of the forgery, and there is no ground to suppose otherwise, no reason existed intentionally to mislead Metropolitan as to having given notice to Mrs. Strubbe.
 
 
 22
 Metropolitan failed to prove not only knowledge and intent, but also reliance. Testimony is completely lacking that if Stratford had replied that only the insured had been notified the loan would not have been made. Neither Metropolitan nor Stratford manifested any concern with parties other than those interested in the loan and therefore concerned with the correctness of the amount Stratford claimed was due it. This concern arose because the insured had informed Metropolitan that the amount stated was incorrect. Apparently Stratford used the term 'all interested parties' in order to inform Metropolitan that not only the insured, but all parties interested in the loan had been given notice, thus affording them an opportunity to dispute the correctness of the account. The finding that Stratford was guilty of fraud against Metropolitan is unsupported in the record and cannot stand.
 
 IV
 
 23
 The question remains whether on the record here the judgment for Metropolitan against Stratford can be sustained in whole or in part on any other basis than the finding of fraud. Metropolitan in its cross claim apparently treated its claim as for unjust enrichment since it sued for money had and received on forged endorsements. The trial court gave Metropolitan relief, however, on a finding that the payment (loan) was induced by a fraudulent misrepresentation by Stratford. Since the issue was tendered by the pleadings, and is susceptible of determination on facts found by the trial court on sufficient evidence or necessarily following from facts properly found, we may here determine whether, even though the finding of fraud is reversed, a basis remains for full or partial relief to Metropolitan against Stratford for money had and received on the forged endorsements.
 
 
 24
 Metropolitan recorded the assignments and transmitted copies to Stratford under the mistaken belief that the purported signatures of Mrs. Strubbe were genuine. Under the same mistaken belief Stratford advanced its money to Wolf and on Wolf's default Metropolitan paid Stratford the amount claimed to be due Stratford from its debtor, in the form of a non-recourse loan on the policies. Both Metropolitan and Stratford are innocent of complicity in the forgery. Absent fraud on Stratford's part, is Metropolitan entitled to recapture its payment from Stratford either because paid under a mutual mistake, or on a theory of unjust enrichment of Stratford at Metropolitan's expense, or on a theory that there was a failure of consideration for Metropolitan's making the non-recourse loan to Stratford? Since both were innocent parties and Stratford parted with its funds and extended its credit in reliance on the purported assignments, there is no equitable or ethical reason to consider its receipt of the funds unjust enrichment and prefer Metropolitan over Stratford in determining on whom the loss should fall. Nor is there any other good reason for preferring one over the other victim of the same mistake.
 
 
 25
 So far as Stratford has established that it did innocently advance funds on the basis of the forged assignments, we think that the New York courts would permit it to retain the money received from Metropolitan in the amounts advanced by it and interest and bonuses due it thereon, as amounts received by one innocent party, for good consideration paid a wrongdoing third party, from another innocent party under a mutual mistake.
 
 
 26
 The courts have had great difficulty in determining whether the enrichment in cases similar to this one is 'unjust.' Compare cases in which restitution has been denied and the first victim has been allowed to keep payments made by the second victim, Ketchum v. Stevens, President of Bank of Commerce, 19 N.Y. 499 (1859), Ball v. Shepard, 202 N.Y. 247, 95 N.E. 719 (1911), New York Title & Mortgage Co. v. Title Guarantee & Trust Co., 206 App.Div. 490, 201 N.Y.S. 529 (1923), aff'd 237 N.Y. 626, 143 N.E. 769 (1924), with others, in which recovery has been allowed by the second victim from the first victim, which it paid under the mutual mistake as to the validity, Hathaway v. Delaware County, 185 N.Y. 368, 78 N.E. 153, 13 L.R.A.,N.S., 273 (1960), National Shawmut Bank v. Fidelity Mutual Life Insurance Co., 318 Mass. 142, 61 N.E.2d 18, 159 A.L.R. 478 (1945). In Hathaway the court stressed that it did not appear that defendant's claim against Woodruff (the defaulting county treasurer and forger of the note) and his sureties had been in any way jeopardized or impaired, and that defendant had parted with nothing in exchange for the check. Shawmut, which allows recovery by the second victim from the first, is influenced in part at least by the fact that defendant had already lost (although it didn't know it) before the second forgery on which plaintiff paid defendant, and by the fact that the first victim had no valid claim against anyone except on the forged instrument. And so in most cases where the second forgery is used to obtain money to pay off the earlier forged obligation.
 
 
 27
 Here, however, there are not successive forgeries. There are successive payments based on the same forgery. To be sure, Metropolitan's payment does bail out Stratford which had never had the secured position for which it had bargained. Yet here there was a valid claim against Wolf and Strubbe, aside from the claim against Strubbe on the forgery. Since both are victims of the same forgery, we think it should be treated as a single transaction, and since Stratford had made a legitimate business loan to Wolf it is not 'unjust' to allow it to retain the money paid by Metropolitan under the mutual mistake as to the genuineness of the assignments.
 
 
 28
 This accords with the Restatement, Restitution, 13[2] and 14,[3] for Stratford gave value and was a creditor of Wolf, whose debt to it was paid by Metropolitan under mutual mistake as to the validity of the assignment. The Restatement in 23(1)(a)[4] refers to the right of restitution in the one who pays under the mistaken belief that a contract existed between a third person and the payee. To hold this applicable, however, would be to ignore the additional facts present here of the existence of the valid contract with Wolf and the giving of value by Stratford, which bring the case within the situation envisioned by Sections 13 and 14.
 
 
 29
 The reporters' notes on Sections 13 and 14 of the Restatement indicate that of the advisors, Mr. Patterson and Mr. Thurston considered that the payee lost his money when he originally made the loan to the forger and that subsequently when he received payment he surrendered nothing of value. The majority of the advisors, however, urged that the payee does surrender something on payment, either a document or a claim against the forger. Seavey & Scott's Notes, Restatement of the Law of Restitution, American Law Institute (1937), pp. 8, 9. The facts in the case at bar fit the reasoning of the majority of the advisors, for Stratford did surrender its claims against both Wolf and Strubbe, and in the time intervening between payment and discovery of the mistake lost whatever chance it had to realize on these claims, Strubbe having gone through bankruptcy.
 
 
 30
 Courts have often displayed a reluctance to order restitution when the parties cannot be restored to their former positions. Crocker-Woolworth National Bank v. Nevada Bank, 139 Cal. 564, 73 P. 456, 63 L.R.A. 245 (1903); Bank of New York N.B.A. v. Thomas W. Simmons & Co., 117 Misc. 103, 190 N.Y.S. 602 (1921). We consider the payment of the amount due from Wolf to Stratford one made under mutual mistake of fact and deny recovery to Metropolitan because no balance of the equities in favor of Metropolitan is shown, and because Stratford suffered a prejudicial change of position between the time of the payment and the discovery of the mutual mistake.
 
 
 31
 To the extent, however, that Metropolitan's payment to Stratford exceeded the amount justly due Stratford from Wolf, it would be inequitable to permit its retention.
 
 
 32
 With respect to the check by Wolf to Stratford for $8,000, dated April 12, 1956, the trial judge made no finding and we can only conclude that it was his opinion that the burden of proof as to payment, being upon the party asserting repayment, Conkling v. Weatherwax, 181 N.Y. 258, 73 N.E. 1028 (1905); Bremer v. Ring, 146 App.Div. 724, 131 N.Y.S. 487 (1st Dept. 1911); In re Murphy's Will, 159 N.Y.S.2d 878, 881 (Surr.Ct. 1957), had not been discharged. See also 8(c) of The Federal Rules of Civil Procedure, 28 U.S.C.A.; Federal Deposit Insurance Corp. v. Siraco, 174 F.2d 360 (2 Cir. 1949); Person v. United States, 112 F.2d 1 (8 Cir.), cert. denied, 311 U.S. 672, 61 S.Ct. 35, 85 L.Ed. 432 (1940). This conclusion is supported by testimony that this represented an exchange of checks which was a temporary extension of credit by Stratford to Wolf. The only testimony in connection with this check was that of Bermack that it might have been an exchange and certainly the fact finder court was free to conclude, if not compelled to, that no payment on the loan in issue had been established.
 
 
 33
 The District Court found that $5,000 of the $25,000 amount to be advanced never reached Wolf's treasury or benefited Wolf in any way. We hold this finding clearly erroneous. The record shows that Kaye, who had apparent if not real authority, instructed Bermack to make a check payable to Bankers Trust Co. in order to facilitate the delivery of 43,000 shares of Stanwood Oil Corp. for which payment was presumably due. Although Wolf never became the record owner of any shares of Stanwood, Bermack testified that the shares were delivered to Kaye.[5] H. Ernest Strubbe had 108,000 Stanwood shares in his name and there was apparently a close connection between Stanwood and Wolf[6] which shared the same offices. Most persuasive that the payment was authorized is the lack of protest by Wolf as to the amount of money advanced by Stratford, each of whom at all times conducted itself as if the full amount called for by the agreement had been advanced. No showing has been made that some arrangement between Wolf and Strubbe was not the cause of the shares being registered in his or some other name rather than that of Wolf.
 
 
 34
 The trial court also found that of the two $1,000 service charges made in January 1957,[7] one was unauthorized and improper. The contract stipulated $1,000 per month. No explanation for the second charge appearing in the record, the finding appears correct.
 
 
 35
 The conclusion of the trial court as to the disbursements of $150 and $500 paid to attorneys is supported by the record;[8] as is the finding with respect to the $364.34,[9] none of which charges are authorized. Stratford argues that paragraph 5 of the agreement which authorizes the lender to interchange debits and credits whether or not pertaining to this transaction supports the charges. But the question is not whether the charges arose out of this transaction but whether they were proper under any transaction. The record shows no authorization at all and so the finding below must be held correct. To allow Stratford to retain these amounts, totaling $2,014.34, and be thus enriched at the expense of Metropolitan would be contrary to established concepts of equity. The doctrine of unjust enrichment is applicable where a 'person sought to be charged is in possession of money * * * which in good conscience and justice he should not retain, but should deliver to another.' Matarese v. Moore-McCormack Lines, 158 F.2d 631, 634, 170 A.L.R. 440 (2 Cir. 1946).
 
 V
 
 36
 Plaintiff seeks damages in accordance with Rule 26(b) of this court, 28 U.S.C.A., claiming the appeal by Stratford is frivolous and brought on only to delay payment of the judgment. Since the judgment as to Stratford has not been affirmed no costs may be awarded under Rule 26(b) which is promulgated pursuant to 28 U.S.C. 1912 and provides for such payment only when a judgment is affirmed.
 
 
 37
 The judgment on Metropolitan's cross claim is modified so as to allow Metropolitan judgment against Stratford for $2,014.34 with interest from February 1, 1957, and affirmed as modified. The judgment in favor of Mrs. Strubbe is affirmed, with costs in favor of Mrs. Strubbe against Metropolitan. No costs are awarded as between Metropolitan and Stratford.
 
 
 
 [1]
 Paragraph F of the collateral assignment form provides that the insurer may recognize the assignee's claims 'without investigating * * * the giving of any notice under Paragraph E(2) above or otherwise.'
 
 
 [2]
 'A person who has entered into a transaction with another under such circumstances that, because of a mistake, he would be entitled to restitution from the other,
 '(a) is not entitled to restitution from a third person who has received title to or a legal interest in the subject matter either from the other or from the transferor at the direction of the other, and has given value therefor without notice of the circumstances;
 '(b) is entitled to restitution from a third person who had notice of the circumstances before giving value or before receiving title or a legal interest in the subject matter.'
 
 
 [3]
 '(1) A creditor of another or one having a lien on another's property who has received from a third person any benefit in discharge of the debt or lien, is under no duty to make restitution therefor, although the discharge was given by mistake of the transferor as to his interests or duties, if the transferee made no misrepresentation and did not have notice of the transferor's mistake
 '(2) An assignee of a non-negotiable chose in action who, having paid value therefor, has received payment from the obligor is under no duty to make restitution although the obligor had a defense thereto, if the transferee made no misrepresentation and did not have notice of the defense.'
 
 
 [4]
 '(1) A person is entitled to restitution from another to whom he has paid his own money because of the erroneous belief induced by mistake of fact,
 '(a) that he was thereby performing the terms of a contract between a third person and the payee, which contract never existed, or had been avoided or otherwise discharged, * * *'
 
 
 [5]
 Record 290-3
 
 
 [6]
 Record 353
 
 
 [7]
 Defendant's Exhibit J
 
 
 [8]
 Record 313-6
 
 
 [9]
 Record 331-2